In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2308

JESSE WEBSTER,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 6510—**James B. Zagel**, *Judge.*

ARGUED SEPTEMBER 21, 2010—DECIDED DECEMBER 19, 2011

Before BAUER, SYKES, and HAMILTON, *Circuit Judges.*

SYKES, *Circuit Judge.* In 1995 a federal jury convicted Jesse Webster on cocaine-trafficking and tax-fraud charges, and his direct appeals were unsuccessful. Some-time after his trial, Webster discovered that a member of the jury had called in sick one day in the middle of deliberations. Webster filed a habeas petition under 28 U.S.C. § 2255 alleging that deliberations proceeded that day in the juror's absence, violating his right to trial by

a jury of twelve. The government did not dispute that a juror was absent for a day but maintained that the rest of the jury was sent home and did not deliberate that day.

In response to the habeas petition, the district judge sent an investigator to interview all the jurors except the one who called in sick. The investigator later testified about the results of the interviews. After weighing this and other evidence, the judge denied § 2255 relief. The judge began by noting that if deliberations proceeded with only eleven jurors present, Webster's convictions would have to be vacated under this court's decision in *United States v. Araujo*, 62 F.3d 930 (7th Cir. 1995). But the judge held that Webster procedurally defaulted his twelve-person jury claim by failing to raise it in his direct appeal or in his § 2255 petition. Ultimately, however, the judge reached the issue by a different route. Webster had argued in the alternative that the bailiff never told the court about the missing juror and instead instructed the jurors to continue deliberating in his absence. This, Webster contended, was a fraud on the court, justifying § 2255 relief. The judge rejected this argument, finding insufficient proof of improper deliberations.

We affirm, though we note several errors in the way the § 2255 petition was handled. First, Webster did not procedurally default his twelve-person jury claim. He could not have raised it on direct appeal because he did not know of the juror's absence, and he adequately raised it in his § 2255 petition by noting the fact of the

juror's absence and generally alleging a violation of his right to a jury of twelve. On the merits, however, the claim is deficient. In rejecting Webster's alternative argument, the judge found that the evidence did not establish that the jury deliberated in the absence of the twelfth juror. This factual finding is not clearly erroneous, and it resolves Webster's appeal.

Although we are affirming the judgment, we have two cautionary comments regarding the district court's approach to the § 2255 petition: (1) For reasons we will explain, the judge read *Araujo* too broadly; and (2) under Rule 606(b) of the Federal Rules of Evidence, the investigator's testimony about the interviews with the jurors was inadmissible.

## I. Background

In 1995 Webster was indicted on five counts: conspiracy to possess with intent to distribute kilogram quantities of cocaine; possession with intent to distribute 15 kilograms of cocaine; attempt to possess with intent to distribute 25 kilograms of cocaine; and two counts of filing false tax returns. He pleaded not guilty and proceeded to trial on Wednesday, November 15.

The jury was selected on November 15, and counsel presented opening statements the next day. The evidentiary phase of the trial immediately followed and continued through Monday, November 20. Counsel delivered closing arguments on Tuesday, November 21, and the case went to the jury late that day. The jury deliberated

on November 22 but did not reach a verdict. The next day was Thanksgiving, so the district court suspended deliberations through the following Tuesday. On Wednesday, November 29, a juror whom we will refer to as "M.J." called in sick. The jury attendance sheet for that day hows that only eleven jurors signed in and includes a handwritten note by the courtroom deputy clerk stating "M[.] J[.] absent." The jury administrator's diary page for that day also indicates that one juror called in sick. However, the trial court's docket entry for November 29 states "[j]ury trial held," as it had for every other day the court was in session since November 16. On November 30 all twelve jurors were in attendance for deliberations, and on that day the jury returned its verdict convicting Webster on all charges except for the possession count. The judge imposed a sentence of life in prison, and we affirmed the convictions and sentence on direct appeal. *United States v. Webster*, 151 F.3d 1034 (7th Cir. 1998).

At some point after the trial, Webster learned of M.J.'s absence on November 29. On October 5, 1998, the Supreme Court denied certiorari in Webster's direct appeal. On October 4, 1999, Webster filed a § 2255 habeas petition asserting multiple grounds for relief. The petition included an allegation that Webster was "denied the right to a jury of 12 peers" based on the absence of a juror during deliberations, but was not more specific about the legal basis for this claim. The petition did not, for example, invoke Rule 23(b) of the Federal Rules of Criminal Procedure or allege a violation of the Sixth Amendment or any other constitutional

guarantee. Webster later amended his petition to make two additional claims related to the juror's absence: (1) his trial and appellate counsel were ineffective for failing to object to the absence of the juror and (2) the bailiff committed a fraud on the court by instructing the jury to deliberate with only eleven members.

In response to the petition and its amendments, the district court first attempted to locate the bailiff—a court security officer—who had been responsible for the safe-keeping of Webster's jury. Six years had elapsed (it was now July 2001), so the judge asked the U.S. Marshal's office to assist in locating the officer. The court eventually determined that the officer was deceased. The judge then decided to send an investigator to track down and interview the jurors. Without input from the parties, the judge appointed an investigator employed by the U.S. Attorney's Office for the Northern District of Illinois. The judge chose this particular investigator because he had worked for the judge in a previous position and the judge had "great confidence" in "his capacity to do exactly what he was told to do, nothing more and nothing less." The judge instructed the investigator to interview all the jurors except M.J. The investigator used a list of questions that the parties jointly drafted.

The investigator apparently encountered some difficulty locating the jurors; the interviews were not completed until 2006. The results were a mixed bag, to say the least. The first question was: "The court records show that on one day one of the jurors did not appear.

Do you recall any such time when that might have oc-curred?" Seven jurors said they did not recall a juror being absent; four jurors said they did. Of the four who did remember a juror's absence, three recalled that an alternate juror replaced the absent juror, a claim wholly unsubstantiated by court records. One of the four thought the juror was absent on the day before Thanksgiving; another claimed the juror was absent on the first two days of deliberations. Two correctly recalled that the absent juror was male; one said the absent juror was female. The second question was: "Do you recall being sent home early because of this juror's absence?" The jurors answered either "no" or that they did not recall.

The investigator testified about the results of the juror interviews at an evidentiary hearing held in Septem-ber 2008. In lieu of live testimony from the courtroom deputy clerk who had worked on Webster's trial, the parties stipulated that the clerk would testify as follows: (1) he "ha[d] a general independent recollection of the Webster case because, among other reasons, the de-fendant received a life imprisonment term"; (2) he recalled being notified of M.J.'s absence; and (3) based on the judge's custom and practice, he believed the jury was sent home that day because of the juror's absence, although he did not personally witness this happening.

Webster's trial and appellate counsel also testified at the hearing. Trial counsel testified that based on his experience appearing before the trial court, the judge would have made a record and notified counsel before sending the jury home early. The attorney did not, how-ever, have an independent recollection of whether this

actually occurred. Webster's appellate attorney testified that he was unaware of the juror's absence until after the conclusion of Webster's direct appeal. Finally, Webster testified that he was never informed that a juror was absent for a day during deliberations until some time long after he was sentenced.

On March 20, 2009, the district court issued a written decision rejecting all of Webster's grounds for habeas relief. Regarding the absent-juror claim, the judge began by noting that "[t]here is no question that it is improper for eleven jurors to deliberate in the absence of the twelfth juror *whether or not prejudice can be shown*," citing generally to *Araujo*, 62 F.3d 930. *United States v. Webster*, No. 99-C-6510, 2009 WL 779806, at *3 (N.D. Ill. Mar. 20, 2009) (emphasis added). But the judge held that because Webster had not raised his twelve-person jury claim on direct appeal and did not list it as a ground for relief in his original § 2255 petition, the claim was procedurally defaulted or untimely.

Ultimately, however, the judge addressed the absent-juror issue in connection with Webster's fraud-on-the-court claim. Webster's theory was that the bailiff instructed the jurors to deliberate in M.J.'s absence without informing the trial judge and this amounted to a fraud on the court. The judge found the evidence insufficient to establish that improper deliberations had actually occurred. Referring to the results of the juror interviews, the judge noted that "[n]one of the jurors recalled deliberating with less than all of the jurors." *Id.* at *4. The judge also cited his normal practice of sending

the jury home when a juror is absent.[1] The judge thought it unlikely that the jurors would have deliberated with fewer than twelve members present because they were accustomed to "waiting for a late juror in the morning or after lunch or while a juror or two attends to personal needs." *Id.* at *4 n.4. Because there was no evidence that the bailiff instructed the jury to deliberate without M.J. and insufficient evidence to establish that the jury actually did so, the judge rejected Webster's claim that his convictions were procured by a fraud on the court. The judge did not address Webster's related claim of ineffective assistance of counsel. The district court granted a certificate of appealability on the absent-juror claim in its various iterations.

## II. Discussion

On appeal Webster concentrates on his twelve-person jury claim and the related claim that trial counsel was ineffective for failing to object to the continuation of deliberations in the absence of the twelfth juror. He has dropped his fraud-on-the-court theory. We review the district court's denial of § 2255 relief under a dual

---

[1] The habeas proceedings were conducted by the same judge who presided over Webster's trial. *See* Rule 4 of the Rules Governing Habeas Corpus Cases (requiring habeas motions to be presented to the judge who conducted the trial and imposed the sentence).

standard of review; we accept the district court's findings of fact unless they are clearly erroneous and review legal questions de novo. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. McGraw*, 571 F.3d 624, 629 (7th Cir. 2009) (internal quotation marks omitted).

As an initial matter, Webster contends that the district court was wrong to conclude that his twelve-person jury claim was procedurally defaulted or untimely. We agree. The judge held that Webster could have raised this claim on direct appeal because the trial docket "clearly showed the absence of the juror and clearly stated that the jury deliberated." *Webster*, 2009 WL 779806, at *3. This overstates the clarity of the docket entries. On November 29, the day the juror was absent, the docket states only "[j]ury trial held," the same generic docket entry that appears for the four days of the trial preceding deliberations. The phrase "[j]ury trial held" appears to be a routine docket entry; it does not capture specific or unexpected trial events, and it was used on all court days during the trial from opening statements through the verdict. The actual evidence of M.J.'s absence appeared only on the jury attendance sheet and in the jury administrator's diary, neither of which were part of the trial record. Accordingly, we cannot fault Webster for failing to raise this claim on direct appeal. *See United States v. Rosario*, 234 F.3d 347, 352 (7th Cir. 2000)

(claims requiring "development of facts outside the record . . . are more properly presented in a § 2255 petition").

The district court also found that Webster had not presented his twelve-person jury claim as a ground for habeas relief in his original § 2255 petition and raised it only later when he filed an amendment to the petition. The court held that the claim was new, did not relate back to any issue in the original petition, and therefore was either procedurally defaulted or untimely. This ruling overlooks the fifth claim for relief in Webster's original § 2255 petition, which asserted that Webster "was denied the right to a jury of 12 peers" and further explained that "one of the jurors was absent during an entire day of deliberations." This is sufficient to preserve the twelve-person jury argument. Accordingly, the claim was neither procedurally defaulted nor untimely.

So we proceed to the merits. The Sixth Amendment's guarantee of trial by jury in criminal prosecutions does not include the right to a jury of twelve. *Williams v. Florida,* 399 U.S. 78, 98-100 (1970); *Araujo,* 62 F.3d at 933. However, Rule 23(b) of the Federal Rules of Criminal Procedure "incorporates that venerable common law tradition as a requirement," with limited exceptions for contingencies arising after trial has begun. *Araujo,* 62 F.3d at 933. The rule provides, in pertinent part:

**(b) Jury Size**

   **(1) In General.** A jury consists of 12 persons unless this rule provides otherwise.

**(2) Stipulation for a Smaller Jury.** At any time before the verdict, the parties may, with the court's approval, stipulate in writing that:

> **(A)** the jury may consist of fewer than 12 persons; or

> **(B)** a jury of fewer than 12 persons may return a verdict if the court finds it necessary to excuse a juror for good cause after trial begins.

**(3) Court Order for a Jury of 11.** After the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror.

FED. R. CRIM. P. 23.

Webster's claim for § 2255 relief is based primarily on Rule 23(b), though he also contends that the claim has "constitutional dimensions" because it implicates his Sixth Amendment right to a unanimous verdict. *See Apodaca v. Oregon*, 406 U.S. 404 (1972); *Johnson v. Louisiana*, 406 U.S. 356 (1972); *id.*, 406 U.S. 366, 369-70 (Powell, J., concurring); *Andres v. United States*, 333 U.S. 740, 748 (1948). The constitutional argument is not well-developed; and of course, the verdict here *was* unanimous, so there is no unanimity problem.

Webster's Rule 23(b) argument suffers from a similar lack of factual foundation. Rule 23 generally requires a twelve-person jury but permits the parties to stipulate "[a]t any time before the verdict" that "the jury may consist of fewer than 12 persons," or that "a jury of fewer

than 12 persons may return a verdict" if the court finds it necessary to "excuse a juror for good cause after trial begins." FED. R. CRIM. P. 23(b)(2). The rule also provides that "even without a stipulation by the parties," the court may, "[a]fter the jury has retired to deliberate," permit "a jury of 11 persons *to return a verdict* . . . if the court finds good cause to excuse a juror." *Id.* 23(b)(3) (emphasis added). Here, no juror was excused. And in rejecting Webster's fraud-on-the-court argument, the district court found insufficient proof that the jury actually deliberated on November 29, the day M.J. called in sick. Unless this finding is clearly erroneous, Rule 23(b) is not implicated because Webster's jury never had fewer than twelve members.

The district court's factual finding was not clearly erroneous. The evidence at the § 2255 hearing was at best ambiguous. As we have noted, although the docket entry for November 29 states "[j]ury trial held," this routine entry is uninformative; it does not tend to prove *or* disprove that the jury actually deliberated that day. The juror interviews do not add much. Webster correctly observes that in some respects the judge appears to have misinterpreted the results of the interview. The judge determined that "[n]one of the jurors recalled deliberating with less than all of the jurors." *Webster*, 2009 WL 779806, at *4. But the investigator did not ask this precise question. Instead, after explaining to each juror that court records showed that one juror had been absent during deliberations, the investigator asked: "Do you recall *being sent home early* because of this juror's absence?" (Emphasis added.) The jurors answered "no" or

did not recall. The "no" answers would tend to support Webster's position, and the "do not recall" answers are a wash.[2]

Regardless of this misunderstanding, however, we are skeptical that the juror interviews can be considered at all. In the first place, under Rule 606(b) of the Federal Rules of Evidence, the jurors' responses to the investigator's questions were inadmissible (more about this in a moment). Moreover, the jurors' responses were riddled with inconsistencies and imaginary occurrences, hardly surprising given the passage of time. That the interviews occurred more than a decade after Webster's trial and so obviously contradicted the record makes it unsafe to rely on them at all (putting aside the question of their admissibility).

Webster also bases his claim on the absence of concrete evidence about what the court did in response to M.J.'s phone call on November 29. Webster argues that

---

[2] To be sure, the next question was: "If yes [you recall being sent home], do you recall if, prior to the time the jury was sent home early, there were deliberations with respect to the verdict?" The notes for this question state "N/A" or "DNA" (presumably, "Did Not Ask") for every juror. This makes sense because the question assumes an affirmative answer to the previous question, but none of the jurors responded accordingly.

In addition, juror "E.G." told the investigator that an absent juror "was present for the deliberations . . . . [N]o one was missing for those deliberations." Later, however, E.G. contradicted himself by stating that he "[d]oes not remember" being sent home early because of the absent juror.

because the court record does not confirm that the judge sent the jury home after M.J. called in sick, we should infer that it did not happen. He notes that 28 U.S.C. § 753(b) requires the court to keep a record of "all proceedings in criminal cases had in open court" and also points to his trial counsel's testimony that the judge would have made a record before sending the jury home after one of its members called in sick. Although the lack of a record is unsettling, it does not provide a sufficient basis to upset the district court's factual finding.

In the end, the judge's finding rested heavily on the court's normal practice of dismissing the jury for the day when a juror is absent. The judge noted that the "undisputed . . . practice in my courtroom, and those of all others in this courthouse, is to send jurors home when the jury is incomplete in a criminal case." *Id.* In addition, the parties stipulated that the courtroom deputy clerk, who had worked for the judge since 1987, would confirm the court's practice if called to testify. Because no evidence suggested that the customary practice was not followed, the judge found that Webster had "not proved" that the jury deliberated on November 29 without the twelfth juror.

The most that can be said about this evidence is that it is inconclusive. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *McGraw*, 571 F.3d at 629 (quotation marks omitted). In this situation, it was entirely reasonable for the trial judge to give decisive weight to his regular courtroom practice. The jurors'

spotty recollections of the decade-old events of the trial—even assuming their admissibility—are too unreliable and hardly sufficient to displace the reasonable inference arising from the court's normal practice. The absence of a formal record is troubling, but not enough to convince us that the judge's "not proven" finding was clearly erroneous.

Before concluding, we have a few words of caution about the district court's treatment of our decision in *Araujo*. The judge read *Araujo* as holding that "[t]here is no question that it is improper for eleven jurors to deliberate in the absence of the twelfth juror *whether or not prejudice can be shown*," and further that "[i]f it is shown that eleven members of the jury deliberated, then the judgment has to be vacated." *Webster*, 2009 WL 779806, at *3 (emphasis added). *Araujo* did not establish such a broad rule. In that case, the trial court *permanently dismissed* a juror during deliberations, and an eleven-member jury returned a guilty verdict against the defendant. *Araujo*, 62 F.3d at 932. Because the trial judge had failed to articulate good cause for excusing the juror as required by Rule 23(b)(3), we vacated the conviction and remanded for a new trial without examining whether the defendant was prejudiced by the juror's absence. *Id.* at 937. In essence, without specifically addressing the matter, we treated the Rule 23(b)(3) error as structural.[3]

---

[3] Other circuits have also treated convictions returned by eleven-member juries under similar circumstances as

(continued...)

Here, in contrast, all twelve members of the jury returned Webster's verdict. *Araujo* does not speak to this situation, and there is reason to doubt that a juror's temporary absence from deliberations is a structural error immune from harmless-error review. *See, e.g., United States v. Shackelford*, 777 F.2d 1141, 1144-45 (6th Cir. 1985) (affirming conviction where juror attended to a personal matter for a few minutes during deliberations); *United States v. Camacho*, 865 F. Supp. 1527, 1534, 1537 (S.D. Fla. 1994) (affirming conviction where juror may have been in the bathroom during deliberations). We need not decide the matter here. The district court found as a matter of fact that the jury did not deliberate on the day M.J. was absent, and this finding is not clearly erroneous.[4]

Finally, we return to the question of the admissibility of the investigator's interviews with the jurors. Rule 606(b) of the Federal Rules of Evidence prohibits jurors from testifying about

---

[3]  (...continued)
structural errors. *E.g., United States v. Ginyard*, 444 F.3d 648, 651-55 (D.C. Cir. 2006); *United States v. Curbelo*, 343 F.3d 273, 280 (4th Cir. 2003); *United States v. Spence*, 163 F.3d 1280, 1284 (11th Cir. 1998); *United States v. Tabacca*, 924 F.2d 906, 915 (9th Cir. 1991); *United States v. Taylor*, 498 F.2d 390, 391-92 (6th Cir. 1974).

[4]  This factual finding also resolves Webster's claim of ineffective assistance of counsel. Because the jury did not deliberate on the day M.J. was absent, Webster's counsel cannot have been ineffective for failing to raise the matter.

any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

FED. R. EVID. 606(b). The rule has three limited exceptions. Jurors may testify about: "(1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form." *Id.* Rule 606(b) codifies the common-law prohibition against using juror testimony to impeach a verdict, which exists to promote the finality of verdicts, protect jurors from harassment, and encourage full and frank discussion in the jury room. *See Tanner v. United States*, 483 U.S. 107, 119-21 (1987).

Here, the investigator questioned the jurors about "matter[s] . . . occurring during the course of the jury's deliberations," so admitting the contents of the interviews plainly violated Rule 606(b). At oral argument Webster's counsel argued that Rule 606(b) was not implicated because the interviews were limited to "historical objective fact"—that is, whether a juror was absent during deliberations, not whether the absence influenced the jury's decision. But as the district court itself acknowledged, the questions "did not fall within the ambit of facts to which a juror may testify under

Rule 606(b)."[5] *Webster*, 2009 WL 779806, at *2 n.2. Indeed, the Supreme Court noted in *Tanner* that Congress enacted the Senate version of Rule 606(b), which unlike the House version, does not permit juror testimony about "objective matters" occurring during deliberations—including inquiries into whether a juror participated in deliberations. *Tanner*, 483 U.S. at 123-25 (noting specifically that the Senate Report disapproved of inquiries into whether "jurors did not take part in deliberations"). At least one district court has explicitly held that questioning jurors about whether one of their number was temporarily absent during deliberations violates Rule 606(b). *See Camacho*, 865 F. Supp. at 1537. The same is true here; admitting the contents of the juror interviews was error.

For the foregoing reasons, and with reservations noted, we AFFIRM the judgment of the district court.

---

[5] The district court justified admitting the interviews based on an unsupported assertion that courts are given "exceptional procedural leeway . . . when fraud on the court is alleged." *United States v. Webster*, No. 99-C-6510, 2009 WL 779806, at *2 n.2 (N.D. Ill. Mar. 20, 2009).