In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3042

MALVIN WASHINGTON,

*Plaintiff-Appellant,*

*v.*

MICHELLE PARKINSON,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:08-cv-06245 — **Virginia M. Kendall**, *Judge.*

ARGUED NOVEMBER 4, 2013 — DECIDED DECEMBER 11, 2013

Before EASTERBROOK, KANNE, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Malvin Washington filed a civil suit alleging that the officer who arrested him during a double homicide investigation used excessive force. The jury found in favor of the officer. Washington now appeals, arguing that the district court abused its discretion in denying Washington's challenge for cause to one of the jurors who heard his suit. But Washington waived this challenge, and we reject his argument.

## I. BACKGROUND

Washington was arrested on January 30, 2007, as a suspect in the double homicide of Jesse Brown and Jacqueline Lemons. While the criminal charges against him were pending, he filed a civil suit under 42 U.S.C. § 1983 against Officer Michelle Parkinson, alleging that she kicked him in the face and hit him with a flashlight while he was transported in a police wagon following his arrest.

*A. Voir Dire*

The district court judge conducted voir dire of 28 potential jurors to select the twelve-person jury that would hear Washington's case. The judge explained to the prospective jurors that each juror would be asked a series of questions. If a question touched on something a potential juror preferred not to discuss in open court, she could request a sidebar. The judge added that some of the questions would cover civil lawsuits, administrative proceedings, and criminal prosecutions, and carefully described each legal proceeding.

When the court called Juror Evans, he answered questions concerning his demographic and family background with no incident. The judge then asked Evans if he had ever been involved with the civil or criminal justice system. Evans responded, "Not that I know of." Upon prompting by the judge, Evans said he had no clue what the question meant. The judge then broke the question down, asking Evans whether he had ever sued anyone or been sued, and whether he had ever been arrested. Evans admitted he had been arrested. When asked to elaborate, Evans requested a sidebar.

At sidebar, Evans explained that he had a DUI pending that had been pending for over two years. The court then asked whether Evans had any strong feelings about the police arising from that arrest. Evans said, "I have no clue. I—I was—I was—I died at the scene." The court questioned him further, and Evans clarified that he had been in a motorcycle accident after which he had to be revived three times. He said he suffered head injuries in the accident but that he did not have difficulty sitting and listening or any lasting cognitive problems. Throughout questioning, Evans spoke slowly and would frequently tilt his head back and close his eyes.

Washington challenged Evans for cause, arguing that "even though he says he doesn't have cognitive problems, he does seem to have trouble getting his words out."[1] The district court considered Washington's point and then asked Parkinson what she thought. Parkinson responded that she did not think there was enough to show that Evans had cognitive difficulties, and that overall, Evans seemed capable of being an impartial juror. The court concluded that it would not strike Evans for cause.

*B. Offer to Empanel a New Jury*

When trial began, Washington was represented by counsel, who presented his opening statement without incident. Defense counsel then began his opening statement, in which he described Washington at the crime scene kneeling over one of the victims. At this point, Washington interrupted, saying, "Can you let the jury know that I'm related to these people? They need to know that I'm related. My sister-in-law. Make me

---

[1] Washington had already used his three peremptory strikes.

look like I'm a stranger." Washington's counsel requested a recess, which the court granted. Even after the recess was granted, Washington continued to speak. The court cut him off and asked the jury to leave the courtroom.

After the jury left, Washington said he wanted to address the court. He said he was concerned about the way the case was being presented and that he intended to fire his appointed counsel and proceed pro se. The judge told Washington that he could represent himself if he chose, but also told him that his attorney was an experienced civil rights litigator. She also told Washington he would have to refrain from any further outbursts, and that he should confer with counsel about how to proceed. After a brief discussion, counsel informed the court that Washington wished to proceed on his own. The judge excused Washington's attorney, but invited him to stay and watch the trial.

The judge discussed with Washington how the trial would proceed. She then called a recess in order to determine whether a new jury needed to be called. After the recess, the judge asked Washington whether he wanted to continue with the 12 jurors who had originally been chosen, despite the fact that they saw him argue with his attorney. Washington consented to continue with the original jury.

But shortly thereafter, Washington decided he did not want to proceed pro se after all. Washington's appointed counsel was still present, and the court asked him to talk with Washington to see if they could reach an agreement. After a discussion, Washington apologized to the court for his earlier

conduct, the jury was called back in, and defense counsel began his opening statement again.

The jury returned a verdict in favor of Officer Parkinson. Washington appeals that verdict, arguing that the district court inappropriately denied his challenge for cause to Juror Evans.

## II. ANALYSIS

Washington argues on appeal that the district court erred in denying his challenge for cause to Juror Evans because Evans was incompetent to serve as a juror. Although he preserved this argument by objecting to Evans during voir dire, *United States v. Brazelton*, 557 F.3d 750, 753 (7th Cir. 2009), he later agreed to the originally-selected jury and thus has waived any right to challenge the jury's composition on appeal.

Washington explicitly agreed to proceed with the originally-selected jury when asked by the district court judge if he wished to do so. As we have previously noted, a more obvious intentional relinquishment of a known right is hard to imagine. *Id.* at 753. This is a textbook example of waiver. Washington tries to argue that because he was not present at sidebar, he did not know of the for-cause challenge to Juror Evans, and thus could not have intentionally relinquished any right. But an attorney is the agent of her client, and an agent's knowledge is imputed to her principal. *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) (attorney is agent of client); *Frey v. Fraser Yachts*, 29 F.3d 1153, 1158 (7th Cir. 1994) (knowledge of attorney imputed to client).

### III. CONCLUSION

Given Washington's explicit waiver of any challenge to the jury composition, we cannot consider his claim. We thus AFFIRM the decision of the district court.