In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 13-2055

RICHARD M. SMEGO,

*Plaintiff-Appellant,*

*v.*

ANITA PAYNE, AMBER JELINEK, and
OKEY NWACHUKWU-UDAKU,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Central District of Illinois.
No. 09-3177 — **Harold A. Baker**, *Judge.*

---

ARGUED FEBRUARY 21, 2017 — DECIDED APRIL 12, 2017

---

Before WOOD, *Chief Judge*, and FLAUM and ROVNER, *Circuit Judges*.

FLAUM, *Circuit Judge*. Near the end of his jury trial on various § 1983 claims, Richard M. Smego was removed from the courtroom. Various law students who had been appointed to act as his counsel remained behind. The jury ultimately returned a verdict in favor of defendants, and one of the law students declined to poll the jury without consulting Smego.

Smego now appeals, arguing that the district court committed reversible error in removing him from the courtroom, and that he is entitled to a new trial under our holding in *Verser v. Barfield*, 741 F.3d 734 (7th Cir. 2013), because he was deprived of his right to poll the jury. For the reasons that follow, we affirm.

## I. Background

### A. Factual Background

Smego is a civilly committed sex offender at a treatment and detention facility in Rushville, Illinois. In 2009, he filed suit against members of his treatment team: Anita Payne, Amber Jelinek, and Dr. Okey Nwachukwu-Udaku. Smego's lawsuit alleged that in early 2009, another Rushville resident sexually assaulted him, and that afterward, defendants forced Smego to continue group therapy sessions with his alleged assailant and retaliated against Smego for filing suit. We held that Smego was entitled to a jury trial on those claims. *See Smego v. Payne*, 469 F. App'x 470 (7th Cir. 2012) (hereinafter, *Smego I*).

Following our ruling in *Smego I*, at a hearing that Smego attended by video conference, the district court offered on its own motion to appoint students from a University of Illinois College of Law clinic to act as Smego's counsel. At a hearing in May 2012, at which Clinical Law Professor Andrew Bequette and a law student appeared on behalf of the clinic, Smego agreed to the representation. Professor Bequette never filed a formal appearance in the case, however, and the May 2012 hearing was the last time that Bequette made an in-person appearance at any hearing. Neither his name nor signature appeared on any filings in the proceedings below. The

only people who entered appearances to represent Smego, or whose names and signatures appeared on filings, were University of Illinois law students.

Before trial began, Smego appeared by video conference or telephone at several hearings. For the three-day trial itself, however, Smego appeared in person pursuant to a writ of habeas corpus *ad testificandum*. On April 17, 2013, the final day of trial, during an off-the-record break in the proceedings sometime after closing arguments, the district judge removed Smego from the courtroom to be transported back to Rushville. The court did not address this removal on the record and issued no cautionary instruction to the jury regarding Smego's absence from the courtroom. The district court did, however, instruct the jury that, "Your agreement upon a verdict must be unanimous. Your verdict must be in writing and signed by each of you, including the presiding juror."

The jury was released for deliberations at 2:06 PM, and at 3:30 PM, the jury notified the court that it had reached a verdict. At 3:43 PM, the jury returned and handed the verdict to the judge. The district court read, "We, the jury, find in favor of each of the defendants and against the plaintiff on both of his claims. All signed by all ten jurors." Smego was not in the courtroom when the jury found in favor of defendants.

After the verdict was read, the district judge asked one of the law students representing Smego whether they wanted the jury polled, and the student, without consulting Smego, responded in the negative. The judge then asked the law students if they wished to end their representation of Smego. They answered affirmatively, and the district court immediately granted the motion.

### B.  Procedural Background

Smego filed a notice of appeal the following month. In December 2013, after we released our decision in *Verser*, Smego moved *pro se* to correct the record under Federal Rule of Appellate Procedure 10,[1] to "include and reflect the fact that Plaintiff was not present for the end of trial including the reading of the verdict by the jury, the decision not to poll the jury, or for any part of the trial or proceedings after the Court signed the Order transporting [Smego] back to the Rushville Treatment and Detention Facility." He asserted in his motion that "before the conclusion of trial and before the Jury returned from Lunch to receive the case and begin deliberating," the district court had ordered him back to detention.

On July 18, 2014, the district judge entered a text order granting Smego's motion "to the extent he seeks confirmation that, after the closing arguments and the jury was sent to deliberate, the court directed that he be transported back to the Rushville Treatment and Detention Center." The order further stated:

---

[1] Federal Rule of Appellate Procedure 10(e)(2) provides:

> (2) If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:
>
>> (A) on stipulation of the parties;
>>
>> (B) by the district court before or after the record has been forwarded; or
>>
>> (C) by the court of appeals.

Fed. R. App. P. 10(e)(2).

This was the court's standard practice before *Verser v. Barfield*, 741 F.3d 734 (7th Cir. 2013). However, unlike the plaintiff in *Verser*, Mr. Smego was represented during the trial by counsel, including when the jury verdict was read. The plaintiff's counsel declined to have the jury polled.

Smego initially proceeded *pro se* on his appeal. After briefing was complete, however, in an Order dated February 24, 2016, we struck the parties' briefs, appointed counsel for Smego, and requested additional briefing on any issue identified by counsel. We also specifically requested briefing regarding:

whether the district court's decision to exclude the plaintiff from the jury's reading of the trial verdict, which is impermissible under *Verser v. Barfield*, 741 F.3d 734 (7th Cir. 2013), if a plaintiff is pro se[,] was permissible in this instance because the district court had recruited law students to present the plaintiff's case at trial.

## II. Discussion

We review a district court's decision to exclude a detained litigant from his civil trial for abuse of discretion. *Perotti v. Quinones*, 790 F.3d 712, 721 (7th Cir. 2015). Abuse of discretion means a serious error of judgment, such as reliance on a forbidden factor, not considering an essential factor, or use of an incorrect legal standard. *See United States v. Warner*, 498 F.3d 666, 680 (7th Cir. 2007); *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1236 (7th Cir. 1997). "A district court also abuses its discretion if the record contains no evidence on

which the court could have relied or if its findings of fact are clearly erroneous." *Warner*, 498 F.3d at 680 (citation omitted).

In most instances, even if we conclude that a district court abused its discretion, the error is subject to harmless error review. *See* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error … by the court or a party … is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *Keaton v. Atchison, Topeka & Santa Fe R.R. Co.*, 321 F.2d 317, 319 n.3 (7th Cir. 1963) ("Courts of Appeals 'gladly' follow [Rule 61] as the best practice." (citing 7 Moore, Fed. Practice 1030 (2d ed. 1955))). However, if an error renders a trial "fundamentally unfair," *Rose v. Clark*, 478 U.S. 570, 577 (1986), or if the nature of a given ruling is such that a demonstration of harm is impossible, *see Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1369–70 (7th Cir. 1990) (addressing ruling allowing magistrate judge to conduct voir dire), the error may be subject to automatic reversal.

### A. Smego's removal from the courtroom

As a civilly committed litigant, Smego's constitutional right of access to the court in civil cases does not necessarily require that he be allowed to personally appear at the proceedings. Smego acknowledges that a lawfully incarcerated party's right of access "is satisfied so long as he has the opportunity to consult with counsel and to present his case to the court." *Perotti*, 790 F.3d at 721; *see also Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976) (explaining that "the right of access is satisfied" so long as "the inmate and his counsel are afforded adequate opportunity to confer confidentially and to

petition the courts about matters in controversy") (citation omitted). That said, "[t]he fact that there is no constitutional right to be present in a civil action does not sanction the summary exclusion of a plaintiff-prisoner from … trial." *Stone*, 546 F.2d at 735. "Rather[,] the trial court must weigh the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner." *Id.* (citation omitted). We have explained that the district judge should consider a number of factors in making this determination, including:

> the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.

*Id.* at 735–36 (citation omitted); *see also Perotti*, 790 F.3d at 721; *Verser*, 741 F.3d at 739.

Smego contends that the district court abused its discretion and committed reversible error by removing him from the courtroom without cause and without weighing any of the *Stone* factors in making the decision (notwithstanding the fact that a number of those factors seem inapplicable to his case). *See Stone*, 546 F.2d at 736 (holding that the record showed the trial court did not sufficiently consider the relevant factors in

concluding that Stone would not be permitted to attend trial). Defendants respond that the district judge did not need to balance the *Stone* factors here, because, unlike the litigant in *Stone*, Smego was present and able to participate in the defense of his case throughout the evidentiary portion of trial.

As a threshold matter, the parties dispute the timing of Smego's removal from the courtroom. If Smego was removed after the jury was charged and missed only the reading of the verdict, as the district court's 2014 order suggests, his removal could not have prejudiced him with respect to the verdict. If so, Smego's claim collapses into his jury-poll argument, which we discuss below. If, as Smego maintains, he was removed prior to the jury being charged, we would likely need to consider whether his absence during instructions could have led the jury to harmfully infer that Smego had abandoned his case. What complicates matters here is that Smego's removal occurred off the record—the trial transcript does not indicate when he was removed; nor did the district judge at any point put on the record the timing or reasons, if any, for Smego's removal.

Smego argues that we should accept his consistent assertion that he was removed from the courtroom before the jury was instructed. However, his Rule 10 motion falls short of documenting his position—it said merely that he was not present for the end of trial, and that he was removed "before the Jury returned from Lunch to receive the case and begin deliberating." This language does not address when the jury was charged. Defendants, meanwhile, submit that the district court already found, in response to Smego's Rule 10 motion, that the court directed Smego's removal from the courtroom

only "after the closing arguments and the jury was sent to deliberate." They also correctly observe that Smego's motion presented only his "personal statements and offered no independent evidence, whether from others present, court or detention facility records, or statements from his counsel, as to when he was removed from the courtroom."

Smego responds that the lack of clarity in the record is the fault of the district court, which failed to comply with the Court Reporter's Act requiring verbatim recording of the entire proceeding. *See* 28 U.S.C. § 753(b) ("Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method … ."). Defendants first respond that Smego forfeited his objection to any noncompliance with the Act by failing to raise a contemporaneous objection. However, since there is no record of the occasion, this Court cannot know whether Smego objected or not. It would be unfair to assume that Smego did not object when the very issue is the lack of a record of the proceeding. *See United States v. Neff*, 10 F.3d 1321, 1324 (7th Cir. 1993) ("A complete record would enable us to determine whether the defendant knowingly and voluntarily forfeited any objection to the irregularity [of the district judge's apparent practice of answering questions from the deliberating jury off the record and without the defendant present].") (citation omitted). Indeed, it is not obvious that any party was aware at trial that Smego's removal took place off the record; and following trial, Smego objected to the court's handling of the matter, which seems to be all that was reasonably feasible under the circumstances.

Defendants next argue that the Court Reporter's Act does not apply in the case at hand because there was no proceeding in "open court" after the jury had retired to deliberate.2 However, case law from both within and without our Circuit suggests that the Act applies to off-the-record court proceedings like Smego's removal hearing. *See, e.g., United States v. Nolan*, 910 F.2d 1553, 1559 (7th Cir. 1990) ("[W]e agree with those courts that have applied § 753(b)'s recording requirement to sidebar discussions … . [T]he reason for requiring courts to record trial proceedings—to preserve a record for appellate review—supports applying § 753(b) to sidebars.") (citation omitted); *United States v. Lawson*, 776 F.3d 519, 521 (7th Cir. 2015) ("*Nolan*['s] … approach is equally applicable to other off-the-record decisions."); *United States v. Patterson*, 23 F.3d 1239, 1254 (7th Cir. 1994) (jury questions "should be answered in open court and defendant's counsel should be given an opportunity to be heard before the trial judge responds" (quoting *Rogers v. United States*, 422 U.S. 35, 39 (1975))) (internal quotation marks, brackets, and ellipsis omitted); *United States v. Brumley*, 560 F.2d 1268, 1281 (5th Cir. 1977) ("we suggest that if the trial court needs to confer with counsel about rulings to be made from the bench[,] the safe course is to excuse the jury or retire to chambers and let the reporter record what takes place"); *United States v. Robinson*, 459 F.2d 1164, 1170 (D.C. Cir. 1972) (per curiam) (proceedings covered by the act include "voir dire examination of the jury, evidentiary

---

2 Although defendants suggest in a heading in their brief that the Court Reporter's Act did not apply in Smego's civil proceeding, the Act plainly requires verbatim recording not only of "all proceedings in criminal cases had in open court," but also of "all proceedings in other cases had in open court unless the parties with the approval of the judge shall agree specifically to the contrary." 28 U.S.C. § 753(b).

presentations before the judge or jury, bench conferences, and arguments of counsel") (footnote omitted); *see also Open Court*, Black's Law Dictionary (10th ed. 2014) ("A court that is in session, presided over by a judge, attended by the parties and their attorneys, and engaged in judicial business … . usu. refers to a proceeding in which formal entries are made on the record.").

Yet, as we explained in *Nolan*, where a district court does not comply with § 753(b), we are not automatically required to reverse the court's judgment. Reversal is warranted "only if the [aggrieved party] can demonstrate prejudice," 910 F.2d at 1560 (citation omitted), and "prejudice occurs only when the unavailability of a transcript prevents the appellate court from determining whether there is reversible error," *United States v. Kimmons*, 917 F.2d 1011, 1014 (7th Cir. 1990) (citation omitted). The normal course for "reconstructing a record" is to file a motion pursuant to Federal Rule of Appellate Procedure 10. *See Nolan*, 910 F.2d at 1560. That is exactly what Smego did here, and, in response, the district court clarified that Smego was removed only after the jury was sent to deliberate. Under this factual scenario, there is no prejudice to Smego, since the removal would not have affected jury deliberations.

Smego counters that Rule 10 may not always prove "an adequate device" when "trial participants' recollections may be too vague, and notes and other trial materials too sketchy." *Id.* He relatedly contends that we need not be bound by the district court's reconstruction of the record if it is unreasonable. *See United States v. Keskey*, 863 F.2d 474, 478 (7th Cir. 1988) ("We must accept the court's reconstruction of the record under Federal Rule of Appellate Procedure 10(c) unless it was

intentionally falsified or plainly unreasonable.") (citation omitted). Smego argues that the fifteen-month gap between the trial and the order, together with the lack of explanation of what sources allowed the district court to fix the time of Smego's removal, render Rule 10 an inadequate solution in this case.

We review the finding of fact in the district court's text order for clear error. *See Ortiz v. Martinez*, 789 F.3d 722, 728 (7th Cir. 2015) (citing *Norinder v. Fuentes*, 657 F.3d 526, 533 (7th Cir. 2011)). The district court noted in its order that removing detained litigants for transfer after the jury was sent to deliberate was the court's "standard practice" pre-*Verser*.[3] We have previously held that a district court may reference its standard practices when reconstructing the record. *See Webster v. United States*, 667 F.3d 826, 833 (7th Cir. 2011) ("Although the lack of a record is unsettling, it does not provide a sufficient basis to upset the district court's factual finding. In the end, the judge's finding rested heavily on the court's normal practice of dismissing the jury for the day when a juror is absent. … Because no evidence suggested that the customary practice was not followed, the judge found that Webster had 'not proved' that the jury deliberated on November 29 without the twelfth juror."). In this case, as in *Webster*, "[t]he most that can be said about th[e] evidence is that it is inconclusive," which is not enough to set aside the district court's finding of fact. *Id.* The district court may very well have made a reasonable

---

[3] And indeed, the timing of the defendant's removal in *Verser* is consistent with the district court's text order. *See Verser*, 741 F.3d at 737 ("After the parties finished presenting their evidence and the district court instructed the jury, the court decided to send Verser back to the prison rather than keep him in the court-house to await the verdict … .").

inference based on its normal practice, and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (citation omitted).

As the district court's finding on the timing of Smego's removal stands, *Stone*'s multi-factor test for removing a party from the courtroom may not even be necessary. Although there is arguably some importance in allowing a litigant to be present during the jury-instructions phase (in addition to the evidentiary phases) of trial, if we accept that Smego was not removed until after instructions, Smego's interest in being present in person seems considerably diminished. And importantly, even assuming an abuse of discretion, Smego cannot demonstrate that any error was prejudicial to him. Under the district court's timeline, if he was removed only after the jury was sent to deliberate, then we cannot see how his absence could have had any prejudicial impact on the outcome of the trial, separate and apart from his inability to poll the jury. There is no evidence in the record that the jury had questions during deliberation or had any other occasion to know that Smego was no longer in the courtroom during deliberations. Smego's absence thus could not have affected the deliberations, and his stand-alone removal claim fails.

### B. Waiver of Smego's right to poll the jury

We now consider the more specific issue of whether Smego's removal deprived him of his right to poll the jury,[4]

---

[4] Federal Rule of Civil Procedure 48(c) provides:

> After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a

such that he is entitled to a new trial. The *pro se* plaintiff in *Verser* was sent back to prison after jury instructions and was thus excluded from the remainder of the proceedings, including participation with respect to jury questions during deliberations, and exercise of his right to poll the jury pursuant to Federal Rule of Civil Procedure 48(c). *Verser*, 741 F.3d at 736–37, 741, 743. We held that Verser was entitled to a new trial. *Id.* at 743. We first noted the importance of a jury poll in ascertaining that each juror approved of the verdict as returned, ensuring accountability for the verdict, and helping to ferret out any dissent that may not have been reflected in the verdict as announced. *See id.* at 738 (citing *Humphries v. Dist. of Columbia*, 174 U.S. 190, 194 (1899); *United States v. Sturman*, 49 F.3d 1275, 1282 (7th Cir. 1995); *United States v. Shepherd*, 576 F.2d 719, 725 (7th Cir. 1978)). As a district court's refusal, or even neglect, to conduct a requested jury poll is ground for a new trial, *id.* at 738–39, we concluded that the same result is required where a litigant is unable to make a polling request after the verdict is read, *id.* at 741. We explained that a litigant's request for a jury poll prior to the verdict would be premature, as "[i]t is quite unlikely that a litigant would want a poll if the jury rules in her favor," whereas "[i]f the verdict is unfavorable, the litigant might be more inclined to ask for a poll if there are indications that a verdict may not have been

---

> lack of unanimity or lack of assent by the number of jurors
> that the parties stipulated to, the court may direct the jury
> to deliberate further or may order a new trial.

Fed. R. Civ. P. 48(c).

unanimous or was otherwise tainted." *Id.* at 740; *see also* Fed. R. Civ. P. 48(c).

Unlike Verser, however, Smego had legal representatives who remained in the courtroom after his removal. Smego argues that counsel should not be considered adequate stand-ins when a detained civil litigant is removed without cause. However, our analysis in *Verser* itself urges otherwise. We emphasized there that "[w]hen a plaintiff is acting *pro se* … the court must take into account the fact that excluding him from the courtroom necessarily also excludes his 'lawyer.'" *Id.* at 739. We also cited to *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76 (1919), in which the Supreme Court explained that the right to be heard entitles one "to be present *in person or by counsel* at all proceedings." *Verser*, 741 F.3d at 739 (citing *Fillippon*, 250 U.S. at 81) (emphasis added). It was specifically because Verser was *pro se* that his exclusion from the proceedings left him "entirely unable to participate in his case." *Id.* In contrast, where a party is represented by counsel he is still "*somehow* able to make a polling request after the verdict is read." *Id.* (emphasis added).

Smego emphasizes that his removal from the courtroom left him "incommunicado,"[5] like Verser, in the moments after the jury announced its verdict, such that he could not ask his lawyer to poll the jury. He cites to *Faretta v. California*, 422 U.S. 806, 832 (1975), for the proposition that lawyers appear in court to assist parties, not to act as their alter egos, as well as

---

[5] Smego submits that because he is civilly committed, allowing him access to his counsel would have required a video or telephone writ, and as no such writ issued after his removal from the courtroom, there is no basis for concluding that Smego was able to communicate with his law student representatives.

to *Illinois v. Allen*, 397 U.S. 337, 344 (1970), in support of the
proposition that the "ability to communicate with" counsel is
one of litigants' "primary advantages of being present at
trial." However, it is a basic principle of "our system of repre-
sentative litigation" that "each party is deemed bound by the
acts of his lawyer-agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626,
634 (1962); *see also id.* at 633–34 ("Petitioner voluntarily chose
this attorney as his representative in the action, and he cannot
now avoid the consequences of the acts or omissions of this
freely selected agent."). And as "an attorney is the agent of
her client," the former's knowledge "is imputed to her princi-
pal." *Washington v. Parkinson*, 737 F.3d 470, 473 (7th Cir. 2013)
(citation omitted). Lawyers often act on their clients' behalf
outside their clients' presence, and we see no reason why this
should not extend to counsel's ability to waive polling the
jury.

There may of course be exceptions depending on the spe-
cific facts of a given case (perhaps, for example, where the cli-
ent has been held incommunicado during the evidentiary
stages of trial prior to the verdict). However, our usual harm-
less-error analysis can facilitate fair outcomes in such in-
stances on a case-by-case basis. Indeed, *Verser* itself is illustra-
tive of this point. There, after his removal from the courtroom,
Verser was unable to learn of or participate with respect to
several questions from the jury during deliberations. These
included: (1) a note to the court after deliberating for about
two hours asking whether there was any video of the key
event at issue in Verser's § 1983 case; (2) another note a little
more than an hour later indicating that the jurors could not
reach an agreement (to which the court responded that they
could choose to return the next day or continue deliberating
further that afternoon); (3) an indication less than an hour

later that the jury had reached a verdict but asking, "Can a juror ask a question to the judge after the verdict is read?," to which the court responded, "First, I have to have a verdict"; and finally, (4) a statement by one of the jurors after the reading of the verdict that, "This was very hard for us. Many of us—the majority feel that the defendants all had a part to play in what happened to Mr. Verser, but because there was a lack of evidence, we could not find the defendants guilty." 741 F.3d at 737. We held that "[o]n these particular facts, we cannot say that the district court's error was harmless," as "Verser would have realized, had he had some way of knowing the circumstances attending the announcement of the verdict, that a poll might be fruitful." *Id.* at 742–43.

In contrast, in Smego's case, even assuming that Smego's counsel could not waive Smego's right to poll the jury, Smego would likely still be out of luck. The district judge instructed the jury that the verdict had to be unanimous, the jury returned such a unanimous verdict in an hour and a half without showing any signs of doubt or dissent, and all of the jurors signed the verdict. The facts here thus show significantly less risk of harm to the removed litigant than the circumstances in *Verser* did.

Smego also tries to make a broader argument that a rule of automatic reversal ought to apply if a litigant is wrongfully removed from the courtroom and deprived of the right to poll the jury, regardless of whether the error is harmless. He says such a rule would be sensible because the difference between cases like his and the ones where a district court does not conduct a requested jury poll (where automatic reversal does apply) is merely "temporal." Smego apparently overlooks that

his counsel explicitly declined to request a jury poll. Moreover, we expressly engaged in a harmless-error review in *Verser*, *see* 741 F.3d at 742–43 (finding that Verser had been prejudiced); and the Supreme Court has stated that "the minor matter of failing to poll the jury when it is clear that the verdict has received the assent of all the jurors cannot be adjudged a nullity, but must be regarded as simply an error," *Humphries*, 174 U.S. at 195.

Finally, Smego argues that even if a lawyer may be an acceptable stand-in for a removed litigant, the procedures related to the appointment and supervision of the law students in the Central District of Illinois were inadequate, such that his law student representatives should not have been able to waive his right to poll the jury. This argument was not presented to the district court on Smego's Rule 10 motion, and we decline to consider it on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."). As we will not be remanding this case, we need not address Smego's argument that Circuit Rule 36 ought to apply on remand.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.