In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2091

GLENN VERSER,

*Plaintiff-Appellant,*

*v.*

JEFFERY BARFIELD, *et al.*

*Defendants-Appellees.*

Appeal from the United States District
Court for the Central District of Illinois.
No. 07-3293 — **Harold A. Baker**, *Judge.*

ARGUED SEPTEMBER 10, 2013 — DECIDED DECEMBER 19, 2013

Before WOOD, *Chief Judge*, and EASTERBROOK and
HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. Inmate Glenn Verser brought this suit
*pro se* under 42 U.S.C. § 1983 against four prison officials
who allegedly held him down and punched him in the
stomach during a cell change. After the jury returned a ver-
dict in favor of the defendants, one might have thought that
there was little left to say. But with the court's permission the
foreperson made a statement on the record after the verdict

indicating that a majority of the jury felt that the defendants "all had a part to play in what happened to" Verser, but based on the evidence "could not find the defendants guilty." Verser did not hear this statement, nor did he learn of the verdict for some time, because at the close of the evidence the district court had excluded him not just from the courtroom but also from all contact with the proceedings, in order to return him to the Illinois Department of Corrections.

Represented by recruited counsel, whom we thank, Verser now argues that his total exclusion from the proceedings prevented him from exercising his right to poll the jury pursuant to Federal Rule of Civil Procedure 48(c), and that such a poll might have made a difference. He asks us to reverse the district court's denial of his motion for a new trial. Despite the deferential standard of review that applies to such rulings, we conclude that Verser is entitled to another trial, and so we reverse the district court and remand his case for further proceedings.

# I

The dispute underlying this case is simple. Verser, an inmate then housed at Western Illinois Correctional Center, began a hunger strike in September 2007, in response to what he perceived as unwarranted prison discipline levied against him. The prison's hunger strike protocols involve moving a hunger striker to a separate cell after he misses three meals; the defendants here are the security officers who moved Verser at around 3:00 a.m. on September 2, 2007. Verser alleges that after defendants Chris Davis and Ryan Robinson deposited him in an isolated cell, they held him down while defendants Jeffery Barfield and Douglas Good-

ing punched him in the stomach. This outburst, according to Verser, was in retaliation for his hunger strike and his previous filing of an allegedly libelous grievance against another officer. The defendants deny that any such assault occurred.

Verser brought suit *pro se* under 42 U.S.C. § 1983, alleging that the defendants violated his Eighth Amendment right (applicable to the states through the Fourteenth Amendment) to be free from the excessive use of force. At the three-day trial the jury heard testimony from Verser, the four defendants, the mental health professional at Western Illinois Correctional Center, and Verser's cellmate at the time of the move; the latter two witnesses testified via video-conference. After the parties finished presenting their evidence and the district court instructed the jury, the court decided to send Verser back to the prison rather than keep him in the courthouse to await the verdict:

> THE COURT: We will be in recess and wait for the return of the verdict. I'm going to return Mr. Verser to the Department of Corrections. Here is your writ. You guys are out of here. All right. We will be in recess and wait for the jury's verdict. We will let you know what it is, Mr. Verser.
>
> VERSER: All right. Thank you, Your Honor.

After deliberating for about two hours, the jury sent a note to the court asking whether there was any video of Verser's cell change. The court, consulting only with defense counsel, answered that there was not. A little more than an hour later, the jurors sent a note indicating that they could not come to an agreement; the court instructed them that

they could choose to come back the next day, or to deliberate further that afternoon.

Less than an hour later, the jury indicated that it had reached a verdict, but it sent a note to the court asking, "Can a juror ask a question to the judge after the verdict is read?" The court responded, "First, I have to have a verdict." The jury then announced its verdict in favor of the defendants; no effort was made to notify Verser at that time.

The district court then asked what the jury's question was, and one of the jurors responded:

> JUROR: We would like to make a statement, if we could. This was very hard for us. Many of us—the majority feel that the defendants all had a part to play in what happened to Mr. Verser, but, because there was a lack of evidence, we could not find the defendants guilty.
>
> THE COURT: Responsible? Liable?
>
> JUROR: Yes. Thank you.

The court then discharged the jury.

After he received notification of the verdict by mail, Verser moved for a new trial. He argued, among other things, that his total exclusion from the proceedings at the time the verdict was read prevented him from exercising his right to poll the jury. See FED. R. CIV. P. 48(c). The district court denied the motion. Regarding Verser's involuntary exclusion from the courtroom, the court wrote that "[Verser] was returned to [prison] when the jury retired to deliberate for valid courthouse security reasons," and that it "was not going to keep Verser in the courthouse and chance his calm

acceptance of an adverse ruling which is the predominant result in this type of case." Finding that Verser was appropriately excluded from the courtroom, the district court went on to explain that "the verdict was clear and supported by the evidence," and so there was no reason to conduct a poll. The court commented that it would not have overturned the verdict had it gone in Verser's favor, but it found that the polling claim did not support the request for a new trial.

Still acting *pro se*, Verser appealed on numerous grounds. In August 2012, this court recruited counsel for him and ordered further briefing on whether he was deprived of his right to have the jury polled, whether the court was required to adopt alternative procedures to allow an involuntarily excluded *pro se* litigant to poll the jury, and whether Verser had forfeited his right to poll by raising no objection at the time he was excluded from the proceedings. We turn to those questions now.

## II

The purpose of a jury poll is "to ascertain for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or induced to sign a verdict to which he does not fully assent." *Humphries v. District of Columbia*, 174 U.S. 190, 194 (1899). We have recognized that a jury poll is meant to ensure jurors' accountability for the verdict, "creating individual responsibility" and ferreting out any dissent that, for whatever reason, was not reflected in the verdict as announced. *United States v. Shepherd*, 576 F.2d 719, 725 (7th Cir. 1978); see also *United States v. Sturman*, 49 F.3d 1275, 1282 (7th Cir. 1995).

A civil litigant's right to poll the jury is established by Federal Rule of Civil Procedure 48(c), which provides, "After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually." FED. R. CIV. P. 48(c). Rule 48(c) was added to the Federal Rules in 2009 (well before Verser's trial, which took place in April 2011), and was modeled on Federal Rule of Criminal Procedure 31(d), which gives the same polling right to the parties to a criminal prosecution. See FED. R. CIV. P. 48 Committee Note. There is little caselaw interpreting Civil Rule 48(c), but both parties suggest, and we agree, that decisions applying Criminal Rule 31(d) are fully applicable to its civil analogue. The civil rule was self-consciously written to extend the right guaranteed by the criminal rule into the civil realm, and there is little reason to distinguish between the two contexts. We have held that the right to poll protected by Criminal Rule 31(d) is a substantial right, but not a right flowing from any of the constitutional rules of criminal procedure. See *Sturman*, 49 F.3d at 1282.

There is no doubt that a district court's refusal, or even neglect, to conduct a jury poll upon a timely request is ground for a new trial. Indeed, failure to conduct a properly requested poll is a serious error ordinarily requiring reversal, see *United States v. F.J. Vollmer & Co.*, 1 F.3d 1511, 1522 (7th Cir. 1993); we have confirmed that litigants "enjoy an absolute right to poll the jury … unless it has been expressly waived," *id.* at 1523 (internal quotation marks and emphasis omitted). Accordingly, we have remanded cases for a new trial not only when the district court refuses to conduct a poll upon request, see, *e.g.*, *id.* at 1522 -23, but also when the court cuts off the possibility of a timely polling request by proceeding too quickly after the announcement of the ver-

dict to matters that would prejudice jurors in a later poll, see *United States v. Randle*, 966 F.2d 1209, 1214 (7th Cir. 1992).

The defendants do not contest that civil litigants have a right to poll the jury upon a timely request, nor do they belittle the importance of the right. They argue instead that this case differs from those in which we have ordered a new trial. The latter cases generally involve some variation on the theme of a failure to poll despite a litigant's timely request. Here, Verser was excluded from the proceedings and so could not ask for a poll; his case therefore presents the distinct question whether Rule 48(c) requires that the court ensure that a party is somehow able to make a polling request after the verdict is read.

### III

Defendants make much of the fact that it was proper for Verser to be excluded from the courtroom at the time the verdict was read. We have no quarrel with that point, as far as it goes, but there is a difference between removing someone from a courtroom and leaving him entirely unable to participate in his case. Trial courts generally have discretion to determine whether an inmate-plaintiff must be excluded from the courtroom for security reasons or other good cause. *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976). The court must balance "the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner." *Id.* When a plaintiff is acting *pro se,* however, the court must take into account the fact that excluding him from the courtroom necessarily also excludes his "lawyer." The "orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose

to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict." *Fillippon v. Albion Vein Slate Co.,* 250 U.S. 76, 81 (1919); see also *Kulas v. Flores,* 255 F.3d 780, 786 - 87 (9th Cir. 2001) (explaining that *Fillippon* does not prohibit exclusion from the courtroom of a disorderly *pro se* plaintiff, at least as a temporary measure, if his disorderly behavior threatens the defendant's right to a fair trial).

Nevertheless, while there is no constitutional right for an inmate to be present at a civil suit he has initiated, his status as an inmate does not automatically mean that he can be excluded summarily. *Stone,* 546 F.2d at 735. Instead, in determining whether an inmate pursuing civil litigation should be excluded from the courtroom, the court must balance "the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining confinement of the plaintiff-prisoner." *Id.*

The record in this case is thin when it comes to reasons why Verser had to be excluded from the courtroom for the verdict. The district court explained that it "was not going to keep Verser in the court house and chance his calm acceptance of an adverse ruling which is the predominant result in this type of case." But Verser had not misbehaved at trial, and the record is filled with instances in which he accepted adverse evidentiary rulings without incident. Verser, however, does not now argue that his exclusion in itself was reversible error, and so we assume for the purposes of this appeal that Verser was properly excluded from the courtroom after the jury retired to deliberate.

But Verser suffered more than simple exclusion from the courtroom. He was left incommunicado, unable to contrib-

ute to questions that arose while the jury was deliberating and unable to respond to the verdict with a request for a poll. The crux of the issue is whether *this* state of affairs violated his rights, and if so, whether a new trial is required. The defendants argue that because Verser's exclusion was appropriate, he was not deprived of his right to poll the jury. As they see it, nothing prevented Verser from raising his request to poll the jury before he was removed from the courtroom, and so the district court committed no error by failing to conduct a poll *sua sponte* after the juror made the troublesome remarks. The first question we must address therefore deals with when a litigant may, or must, request a poll.

The plain text of Rule 48(c) indicates that any request for a poll made before the verdict is read would be premature. Recall that the rule says "*[a]fter* a verdict is returned but before the jury is discharged, the court must on a party's request … poll the jurors individually." FED. R. CIV. P. 48(c) (emphasis added). It is a stretch, at best, to interpret the word "after" to mean "before or after." The time-limiting language in the first clause most naturally constrains everything that follows—both the poll and the request. It would be nonsensical to read this language to address only when the court is permitted to conduct a poll, since as a matter of simple logic a poll of the jurors is impossible until they have delivered their verdict.

The question when the rule either permits or compels a litigant to request a poll is slightly different from the question when the poll would take place. Specifically, the issue is whether a litigant may make such a request before the jury retires to deliberate. In our view, both the language of the rule and functional considerations point in the same direc-

tion: the request must come after the verdict is read. The rule
does not contemplate an automatic poll after every verdict.
Instead, it makes a poll mandatory if a party requests one,
and optional if the court thinks one is desirable. We have
explained that "the right to poll a jury cannot be exercised
*intelligently* until after the verdict has been announced, and a
request prior thereto would be premature." *United States v.
Marr*, 428 F.2d 614, 615 (7th Cir. 1970) (emphasis added). In-
deed, in *Marr*, this court found that a request to poll made
before the verdict was "abandoned" by a litigant's failure to
reassert it after the verdict, and we therefore refused to upset
the conviction on the ground that the district court failed to
poll the jury. *Id. Marr* shows both that a litigant might rea-
sonably choose to forgo a jury poll, and also that the decision
whether to poll is meaningful only after the verdict has been
returned. It is quite unlikely that a litigant would want a poll
if the jury rules in her favor. If the verdict is unfavorable, the
litigant might be more inclined to ask for a poll if there are
indications that a verdict may not have been unanimous or
was otherwise tainted.

We have never interpreted either the civil or the criminal
rule in a way that would make a polling request raised in
anticipation of the verdict sufficient to protect a litigant's
right. In *United States v. Randle*, we remanded for a new trial
because the two-second interval between when the verdict
was announced and when the district judge began to read a
bond describing the defendant's previous arrests was "clear-
ly inadequate" to move for a poll. 966 F.2d 1209, 1213 -14
(7th Cir. 1992). If the possibility of a pre-verdict request were
adequate to safeguard a party's right to poll the jury, the
amount of time available to raise a request after the verdict
was read would have been immaterial. And in *United States*

*ex rel. SEC v. Billingsley*, 766 F.2d 1015 (7th Cir. 1985), we ap-
proved of a procedure by which the district court obtained
an advance waiver of the right to poll the jury from a party
who would be voluntarily absent from the reading of the
verdict. *Id.* at 1019 n.5. Obtaining such a waiver would have
been unnecessary if counsel could simply have lodged a
preemptive motion to poll before the defendant departed.

We have no need to decide in this case whether a district
court would err if it accepted a preemptive motion for a poll,
even though it is under no obligation to do so. But that is a
different matter from the question whether the rule permits
the court to make it impossible for the litigant to seek a poll
at the appropriate time. Because the proper time to raise a
polling request is after the verdict is read but before the jury
is discharged, a party's right to poll under Rule 48(c) is not
adequately protected by the questionable possibility that he
could have requested a poll preemptively.

The defendants suggest in the alternative that Verser
waived or forfeited his right to poll the jury by raising no
objection when he was removed from the courtroom when
the jury retired to deliberate. But, as we have noted already,
whether Verser was appropriately excluded is not the right
question to ask. Even if his physical removal from the court-
room was done for valid reasons, the court cannot imple-
ment that removal in a way that leaves a party unable to par-
ticipate in the remaining proceedings in the case.

The court had a number of options available, any of
which would have preserved Verser's right to ask for a poll.
It could have essentially done nothing, by allowing Verser to
remain in the courtroom (perhaps under enhanced security,
if the risk of an outburst warranted such a measure); it could

have removed Verser from the courtroom and sent him to a nearby holding cell, available to be called back quickly if something came up; it could have returned Verser to the prison but ensured that he remained in touch with the court (perhaps using a guard's cellphone) and could reach a video room at the prison if his presence were required. These measures, or others suitable to local conditions, were not important only for purposes of a jury poll. If, as happened in Verser's case, the jury asks a question, each party has the right to provide the judge with its views on that as well. See, *e.g.*, *United States v. Neff,* 10 F.3d 1321, 1324 (7th Cir. 1993); see also FED. R. CRIM. P. 43(a). When Verser's jury asked whether a video of the crucial event existed, the judge followed defense counsel's suggestion and responded that there was not. This may not even have been accurate: we know that there was no video in the record, but it is possible that a video existed that the prison was unwilling to give to an unrepresented inmate.

Although Verser has stressed the fact that his total exclusion from the proceedings prevented him from seeking a poll under Rule 48(c), that is just one adverse consequence that can arise when a litigant is prevented from communicating with the court while his case is before the jury. We conclude that the court erred by placing Verser in this situation.

## IV

We must now determine whether the district court abused its discretion by denying Verser's motion for a new trial. Verser argues that we should apply the standard used where a district court fails to conduct a poll on a timely request; in such cases, he argues, courts find that the denial of

the right to poll the jury requires automatic reversal. The defendants retort that unlike an express or implied refusal to poll on request, a litigant's inability to raise a timely motion for a poll should be subject to harmless-error review. We consider first whether Verser can show prejudice; if he can, there is no need for us to reach the broader, structural issue.

Knowing that the question of prejudice was likely to arise, we asked the parties at oral argument to file supplemental memoranda discussing any empirical analyses of jury polls that they could find. Our hope was that this kind of scholarly research might shed light on the situations in which polls are requested and the frequency with which polls reveal hidden splits among jurors. The defendants responded with a brief statement indicating that they had found no research addressing the court's question. Verser, through counsel, reported that he had found just one study that "loosely touched" upon the court's request: a May 21, 2009, report of the Oregon Public Defense Services Commission, entitled "On the Frequency of Non-Unanimous Felony Verdicts In Oregon," available at http://www.oregon.gov/ OPDS/docs/Reports/PDSCReportNonUnanJuries.pdf. This study found that "[o]f the 662 sample cases [representing indigent appeals from a pool of 1,421 trials in 2007 and 2008], jury polling occurred in 63%. In the remaining 37%, either polling was not requested by defense counsel, or was conducted in secret, with the results not part of the public record. … Where the record reflected the jury vote, 65.5% of all cases included a non-unanimous verdict on at least one count." Because the purpose of this study was to investigate Oregon's non-unanimous jury system, however, these results are neither surprising nor of much use to the question

before us. We therefore proceed on the basis of the facts before us in Verser's case.

The defendants suggest that the error here was harmless because there was no affirmative indication that any individual juror actually disagreed with the verdict. They characterize the juror's post-verdict statement that "the majority feel that the defendants all had a part to play in what happened to Mr. Verser" as merely expressing the jurors' emotional dissatisfaction with the outcome and confirming that they applied the appropriate evidentiary standard. This argument suffers from two problems. First, the statement was made by a single juror. A jury poll, in contrast, is justified by the notion that each juror must speak for herself, to ensure that the spokesperson's report of the verdict accurately reflects unanimity. Second, even if the defendants' theory is plausible, it is not the only interpretation that could be given to the events that accompanied the reading of the verdict.

The point is not that a jury poll definitely or even likely would have revealed that the verdict was not unanimous. It is that Verser would have realized, had he had some way of knowing about the circumstances attending the announcement of the verdict, that a poll might be fruitful. A reasonable party, taking into account this jury's initial indication that it was deadlocked, the speed with which it then returned a verdict, the statement (not emphasized by defendants) that a majority of jurors felt that the defendants had "something to do with what happened to Mr. Verser," and the juror's mistaken use of the term "guilt" (usually associated with the reasonable-doubt standard) rather than the civil term "liability," would likely have requested a poll of the jury. Verser was unable to observe or otherwise to learn

about these events. On these particular facts, we cannot say that the district court's error was harmless.

The defendants' proposed standard for finding prejudicial error—that there was a signal of "particular disagreement" with the verdict by a juror—asks too much. The purpose of a jury poll under Rule 48(c) is to discover unexpressed dissent, not to reconfirm dissent that is already apparent. The circumstances here indicated an elevated possibility that at least one juror might not agree with the verdict as read. This is exactly why Rule 48(c) exists.

## V

As we noted earlier, there are a number of options available to a district court that believes a *pro se* litigant must be excluded from the courtroom. Although the inability to make a timely request for a poll is one serious consequence of being cut off from the proceeding, it is not the only one. Jurors sometimes ask questions; courts sometimes need to craft supplemental instructions. The litigant's exclusion leaves him unable to provide the judge with his views about these critical matters. Because Verser could not exercise his right under Rule 48(c) to poll the jury and no alternative measure to safeguard the right was put in place, we REVERSE the district court and REMAND for a new trial.