**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0647n.06

No. 14-2013

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARIO SIMMONS, | ) | **FILED** |
| | ) | Sep 16, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DIANNA NAPIER, MUSA MAHOI, and DAVID | ) | COURT FOR THE EASTERN |
| VILLEROT, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:    BOGGS and BATCHELDER, Circuit Judges; and HUCK, District Judge.[*]

BOGGS, Circuit Judge.  In 2011, Plaintiff-Appellant Mario Simmons filed a lawsuit against three Wayne State University police officers under 42 U.S.C. § 1983 and Michigan law, alleging, inter alia, excessive force, assault and battery, and false arrest and imprisonment in connection with his June 2010 arrest.  After a trial was held from April 8 to April 17, 2014, the jury found in favor of the defendant officers on all counts.  Simmons filed a motion for a new trial, which the district court denied on July 7, 2014.  For the reasons given below, we affirm the district court's judgment.

I

A

Mario Simmons was arrested by Wayne State University Police Officers Dianna Napier and Musa Mahoi on June 30, 2010, after Simmons had an argument with the clerks at a Mobil

---

[*] The Honorable Paul C. Huck, Senior United States District Judge for the Southern District of Florida, sitting by designation.

gas station. The officers responded to a call from dispatch stating that there was an armed man threatening to shoot the clerks. According to the officers, they encountered Simmons near the gas station and, at gunpoint, commanded him to stop. After Simmons refused their commands, Officer Napier took Simmons to the ground. Officers Napier and Mahoi then handcuffed Simmons and patted him down, finding a boxcutter. The officers used verbal warnings, physical force, and ultimately pepper spray to complete the arrest when Simmons refused to get into the police car.

Following the arrest, Officers Mahoi and Napier brought Simmons to the Wayne State University Police Department for booking, where they were joined by Officer David Villerot. The officers then brought Simmons to Detroit Receiving Hospital for an examination and to have his eyes flushed of pepper spray. Simmons was ultimately transported to the Detroit Police Department, where he remained until he was released without charge the following day.

After he was released from police custody, Simmons went to Henry Ford Hospital, where he was diagnosed with numerous bulging and herniated discs in his spine. Simmons underwent a spinal fusion soon after.

Simmons alleged that he was cooperative throughout the encounter and that the officers used violent and excessive force that caused his spinal injuries. He also suffers from psychological and emotional problems, which he alleged were caused by his encounter with the officers. The officers disputed these allegations.

B

On August 4, 2011, Simmons filed a complaint under 42 U.S.C. § 1983 and Michigan law in the United States District Court for the Eastern District of Michigan, alleging that Defendants-Appellees Napier, Mahoi, and Villerot deprived him of his rights by using excessive

force that caused physical injuries and psychological trauma. On June 28, 2013, the district court granted in part and denied in part the motion for summary judgment filed by the defendant officers. The court applied sovereign immunity to dismiss Simmons's claims against the officers in their official capacities and granted summary judgment to the officers on Simmons's claims of intentional infliction of emotional distress and gross negligence. The court denied summary judgment and refused to apply qualified immunity with respect to Simmons's claims of excessive force, assault and battery, and false arrest and imprisonment. The parties proceeded to a jury trial on these remaining claims.

After a trial was held from April 8 to April 17, 2014, the jury found in favor of the officers on all counts. On May 22, 2014, Simmons filed a motion for a new trial, pursuant to Federal Rules of Civil Procedure 50 and 59. Simmons raised seven grounds for relief: 1) the failure of the district court to conduct meaningful voir dire of the jury; 2) the failure to allow questioning regarding Officer Mahoi's alleged past history of aggressive behavior; 3) the failure to exclude allegedly improper expert testimony asserting that Simmons was intoxicated during the arrest; 4) the failure to grant a mistrial after Officer Mahoi improperly testified that one of Simmons's witnesses was incarcerated; 5) the failure to instruct the jury on Simmons's theory regarding the officers' unlawful failure to intervene; 6) the failure to conduct a proper, individualized poll of the jury as requested at the conclusion of the case; and 7) that the jury verdict was against the great weight of the evidence.

The district court denied the motion on July 7, 2014, after holding that Simmons failed to establish that any of the purported errors likely affected the outcome of the trial or that the jury's verdict was unreasonable. Order, *Simmons v. Napier*, No. 11-cv-13403 (E.D. Mich. July 7, 2014) ("Order"). Simmons appeals from that decision, raising the same grounds for relief.

II

"[A] motion for a new trial will not be granted unless the moving party suffered prejudice." *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004). "The burden of showing harmful prejudice rests on the party seeking the new trial." *Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528, 541 (6th Cir. 1993). To demonstrate prejudice stemming from evidentiary error, it is not sufficient merely to show that the district court made a mistake in admitting or excluding certain evidence. *Kendel v. Local 17-A United Food & Commercial Workers*, 512 F. App'x 472, 479 (6th Cir. 2013). Rather, the moving party must demonstrate that the evidentiary error "amounted to more than harmless error." *Field v. Trigg Cty. Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004). In this context, the harmless-error standard requires that the court lack "a 'fair assurance' that the outcome of a trial was not affected by evidentiary error" before disturbing the verdict. *Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc); *see also Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 677 (6th Cir. 2000) ("A [r]eversal based on improper admission of evidence is appropriate only when the admission interfere[s] with substantial justice." (alterations in original)).

We review a district court's denial of a motion for a new trial for abuse of discretion. *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 388 (6th Cir. 2014). Under this standard, we will reverse the decision "only if we have 'a definite and firm conviction that the trial court committed a clear error of judgment.'" *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)).

### III

In this appeal, Simmons offers seven independent grounds for reversing the jury's verdict and the district court's judgment. *Cf. Fifth Third Mortg. Co. v. Chi. Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012) ("When a party comes to us with nine grounds for reversing the district court, that usually means there are none."); *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 955 (7th Cir. 1996) ("Losers in a trial can go hunting for relief on appeal with a rifle or a shotgun. The rifle is better. . . . [T]he shotgun approach may hit the target with something but it runs the risk of obscuring significant issues by dilution."). We address them all in turn.

### A. Voir Dire

Simmons argues that the district court erred by conducting its own voir dire of the jury and by failing "to ask numerous questions [that were] specifically requested." Appellant Br. 35. This argument is easily rejected.

### 1

Federal Rule of Civil Procedure 47(a) provides that a "court may permit the parties or their attorneys to examine prospective jurors *or may itself do so*." (emphasis added). The Rule thus places the decision as to whether to have the parties or the judge conduct voir dire firmly in the discretion of the district court. *See, e.g.*, *Csiszer v. Wren*, 614 F.3d 866, 875 (8th Cir. 2010) ("Federal Rule of Civil Procedure 47(a) expressly permits a district court to conduct voir dire itself."); *Morrissey v. B.G. Danis Co.*, No. 84-3701, 1985 WL 13810, at *1 (6th Cir. Oct. 31, 1985) ("Under Federal Rule of Civil Procedure 47(a), the district court has broad discretion to control and conduct the examination of prospective jurors during voir dire."). Rule 47(a) further provides that, "[i]f the court examines the jurors, it must permit the parties or their attorneys to make any further inquiry *it considers proper*, or must itself ask any of their additional questions

*it considers proper.*" (emphases added); *see also Eisenhauer v. Burger*, 431 F.2d 833, 836 (6th Cir. 1970) ("The scope of questions permitted to be asked on voir dire examination is generally a matter addressed to the sound discretion of the court.").

In this case, the district court allowed the parties to suggest questions and asked the prospective jurors many of those questions. Order at 3. The court did "declin[e] to ask certain questions offered by both parties because the questions were argumentative and improper," and Simmons raised no arguments challenging that determination. *Ibid.* Indeed, even on appeal, Simmons fails to identify any specific questions that the district court failed to ask during voir dire that caused him prejudice. Moreover, in making the bald assertion that "voir dire was effectively useless" because, for example, it did not "delve into the natural bias of persons" in favor of police officers, Appellant Reply Br. 5, Simmons simply ignores the extensive questioning conducted by the district court on that very topic, which resulted in at least one potential juror being dismissed for cause.

2

Simmons cites the Fifth Circuit's 1977 decision in *United States v. Ledee* and alludes to various legal scholarship in support of the argument that refusing attorneys "the right" to conduct voir dire harms "the judicial system" because it leaves attorneys and their clients "feeling helpless and disenfranchised" and because attorneys are better able to expose potential juror bias than judges. Appellant Br. 33–34. These arguments, which would more appropriately be presented to legislators or in a law journal, do not change the outcome.

In *Ledee*, the Fifth Circuit did observe that "voir dire examination in both civil and criminal cases has little meaning if it is not conducted by counsel for the parties" because "[a] judge cannot have the same grasp of the facts, the complexities and nuances as the trial attorneys

entrusted with the preparation of the case." 549 F.2d 990, 993 (5th Cir. 1977). Despite this observation made in dictum, however, the *Ledee* court itself made clear that "[i]n the federal courts questioning is generally done by the judge and counsel may submit questions for the jury which the judge may or may not use." *Ibid.* (contrasting the "'federal' method" of "having the judge carry the burden of questioning" with the "'state' method" of "affording counsel reasonable opportunity for direct questioning of jurors individually"). Indeed, the Fifth Circuit ultimately found no error with the trial court's refusal to ask certain requested questions during voir dire after recognizing that the criminal analog of Civil Rule 47 "allows the trial judge wide discretion as to the scope and conduct of voir dire examination." *Id.* at 992.

Simmons's conclusory assertion that the district court's "failure to allow counsel to conduct voir dire" and "refus[al] to ask numerous questions" denied him "a full opportunity to determine the biases of the possible jurors," Appellant Br. 32, 35–36, is simply insufficient to demonstrate prejudice in this context. *Cf. Lips v. City of Hollywood*, 350 F. App'x 328, 339 (11th Cir. 2009) ("We will not reverse a district court's decision based on the voir dire that it conducted unless it is shown *with specificity* that the voir dire did not provide a reasonable assurance that the jurors' prejudices could be discovered." (emphasis added)). The district court here "conducted voir dire in accordance with Rule 47 and within the bounds of its broad discretion." *Csiszer*, 614 F.3d at 875.

## B. Prior Bad Acts

Simmons next argues that the district court improperly prevented him from questioning Officer Mahoi and introducing certain portions of the deposition testimony of a former officer, Gregory Gladden, regarding Officer Mahoi's alleged "use of excessive force in the course of his [prior] arrests." Appellant Br. 27. The district court excluded this evidence because it was

overly prejudicial and because it was barred by Federal Rule of Evidence 404, which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *see also* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.").

1

In an attempt to circumvent Rule 404's bar, Simmons claims that he sought to introduce evidence of Officer Mahoi's past conduct "not on [sic] an attempt to show that . . . Mahoi acted in a certain way in this instance involving Mr. Simmons, based on his past behavior, but to show that he acted with intent and a lack of mistake and/or accident in acting aggressively toward [Simmons] in the course of his arrest." Appellant Br. 27. This assertion is suspect.

The district court was convinced—and for good reason—that Simmons's real purpose for the evidence was to attempt to "prove that Mahoi had a character trait of being violent and, during the incident at issue, he acted in accordance with that trait." Order at 5. The court reached this conclusion based in part on Simmons's own assertion that "proof that Mr. Mahoi had previously engaged in . . . being overly aggressive with citizens in the past would be strong evidence that he was aware that his actions were deemed inappropriate but that he continued to use unnecessary and unreasonable force." Pl.'s Mot. for New Trial at 10. "This is precisely the sort of propensity reasoning Rule 404(b) forbids." *Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500, 507 (6th Cir. 2012) (affirming the exclusion of proposed bad-act evidence that "would go to prove" that the defendant officer "is the sort of person who would unjustifiably tase someone, which tends to show that his tasing of [the plaintiff] is also unjustified"); *see also*

*Franklin v. Messmer*, 111 F. App'x 386, 388 (6th Cir. 2004) ("[The plaintiff] wished to introduce evidence, such as a disciplinary complaint, that [the defendant officer] had engaged in excessive force in the past, including his use of pepper spray. . . . As [the plaintiff] wanted to enter [the officer's] prior conduct to demonstrate his underlying intent in arrests, i.e., his propensity for excessive force, the evidence was properly excluded" under Rule 404(b).); *Turner v. Scott*, 119 F.3d 425, 430 (6th Cir. 1997) (suggesting that a defendant officer's "past history [of misbehaving] would not have been admissible at trial" under Rule 404(b)).

2

Even if we were to accept Simmons's assertions on appeal regarding the purpose of the proposed evidence, his claim would still fail. Demonstrating intent or the absence of mistake or accident is indeed a permissible purpose under Rule 404(b). *See* Fed. R. Evid. 404(b)(2) (Evidence of a crime, wrong, or other act under (b)(1) "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). In determining whether certain evidence is admissible under Rule 404(b), a district court will employ the following three-part test:

> *First*, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second*, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013). To satisfy the second part of this test, the evidence must be offered for a permissible purpose; that purpose must be material or "in issue" in the case; and the evidence must be probative with regard to that purpose. *United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011).

The district court properly applied this framework to exclude the evidence at issue here. As an initial point, Simmons failed to demonstrate that any mistake or accident by Officer Mahoi was at issue in this case. In fact, the officers did not seek to justify their actions on the basis of mistake or accident at any point. *See United States v. Bell*, 516 F.3d 432, 442 (6th Cir. 2008) (For evidence regarding mistake or accident to be relevant, "the defendant must assert a defense based on some type of mistake or accident."). Rather, they maintained throughout that they used appropriate force based on Simmons's lack of cooperation and the severity of the alleged crime to which they were responding. *See, e.g.*, Defs.' Mot. for Summ. J. at 10 (asserting that the officers "used a reasonable amount of force to effectuate the arrest" of Simmons).

Moreover, Simmons's "claim that the evidence goes to [Officer Mahoi's] intent fares little better" because "[a]n excessive-force claim under federal law requires the factfinder to decide whether the force the officer used was objectively reasonable" and "the officer's actual motives in using a particular degree of force are irrelevant." *Helfrich*, 497 F. App'x at 507; *see also Tanberg v. Sholtis*, 401 F.3d 1151, 1168 (10th Cir. 2005) ("[E]vidence tending to show [an officer's] subjective state of mind is irrelevant to the jury's proper inquiry" in an excessive-force case under federal law.). Indeed, when instructing the jury regarding the excessive-force claim, the district court correctly observed that the jury "must not consider whether a defendant's intentions were good or bad" but rather "must decide whether a defendant's use of force was unreasonable from the perspective of a reasonable officer."

Even if Officer Mahoi's intent were relevant to Simmons's state-law claims of assault and battery or false arrest and imprisonment, which is an issue that we need not resolve here, the district court properly rejected the evidence. First, the vague references in Gladden's deposition testimony to Officer Mahoi's "no-nonsense" or "aggressive" demeanor are simply insufficient to

demonstrate that any prior *acts* of excessive force or misconduct of any kind *actually occurred*. *See Adams*, 722 F.3d at 810 ("[T]he district court must decide whether there is sufficient evidence that the other act in question actually occurred" before admitting the evidence.). In addition, because Gladden was an unavailable witness, he would not have been able to expand upon or clarify at trial his statements regarding Officer Mahoi's alleged aggressiveness. As a result, the district court's determination that the prejudicial effect of admitting the available testimony would outweigh its probative value—a conclusion that is entitled to "very broad" deference, *United States v. Fisher*, 648 F.3d 442, 449 (6th Cir. 2011)—was not unreasonable. *Cf. Helfrich*, 497 F. App'x at 508–09 (affirming the exclusion of testimony regarding a prior act of force by a police officer, even if potentially relevant to intent, because its "probative value was slight" and "it created a substantial danger of undue delay, unfair prejudice, and confusing the jury," *id.* at 509). Finally, in light of Gladden's further deposition testimony that he regarded Officer Mahoi as "very professional" and "a great officer," and that he never saw Officer Mahoi beat an arrestee unnecessarily, use a choke hold, or even use excessive profanity, Simmons cannot demonstrate that excluding portions of Gladden's testimony caused him prejudice.

### C. Improper Expert Testimony

Simmons next argues that the district court improperly allowed the defense to present expert deposition testimony to the jury asserting that Simmons was intoxicated during the relevant course of events, and that defense counsel improperly repeated this assertion during closing arguments. In his deposition, the emergency-room physician who initially treated Simmons after his arrest testified that Simmons presented with "acute alcohol intoxication." Simmons asserts that this observation was unsupported by medical evidence, such as a blood or urine test, and thus constitutes improper lay testimony that invaded the province of the jury.

The deposition testimony presented to the jury makes clear that, while the testifying physician did not conduct a blood or urine test, his opinion that Simmons was intoxicated was "based on [his] clinical assessment and [Simmons's] self reported history of drinking alcohol that evening." While the physician did note that his ability to identify intoxication was based in part on his life experiences (as one might expect), he also explained that his medical training equipped him to understand when a person is intoxicated and to identify the "common presentation of alcohol intoxication."

In the alternative, if the physician's statements regarding Simmons's purported intoxication are considered to be lay testimony, courts have held that such testimony can properly be admitted. *See, e.g.*, *United States v. Denny*, 48 F. App'x 732, 737 (10th Cir. 2002) (police officer's testimony that the defendant was "extremely intoxicated" based on his slurred speech and unsteady gait was proper lay testimony); *Durant v. United States*, 551 A.2d 1318, 1324 (D.C. 1988) ("Whether a patient is 'well under the influence of alcohol' is not a matter about which competent physicians are likely to differ. Indeed, because alcohol intoxication is considered to be a matter of common knowledge, lay witnesses may render opinion testimony regarding alcohol intoxication."); *cf.* 1 McCormick on Evid. § 11 (7th ed.) ("Lay witnesses have been permitted to express opinions on extremely varied topics. The topics include . . . intoxication. . . . [C]ourts assume that most American adults are competent to testify about alcohol intoxication . . . .").

In any event, even if the testimony were improper, Simmons cannot demonstrate that its admission amounted to more than harmless error. As stressed by the district court, "Simmons'[s] alcohol intoxication was not a significant issue in the case," Order at 8, and it did not go to an ultimate issue in resolving Simmons's claims. Indeed, Simmons himself observes that "none of

the Defendants indicated that [Simmons] was intoxicated nor that intoxication had anything to do with [Simmons's] actions, reactions or his arrest."[1]  Appellant Br. 39.  There is, therefore, a fair assurance that the ultimate outcome of the trial "was not affected by evidentiary error."  *Beck*, 377 F.3d at 635.

Similarly, Simmons cannot demonstrate prejudice with regard to defense counsel's closing arguments, in which counsel repeated the physician's diagnosis of acute intoxication. Simmons's own counsel had the opportunity to rebut this argument, and the district court consistently instructed the jury that "the lawyers' opening statements and closing arguments . . . were not evidence."  On this basis, and considering the minor relevance of Simmons's intoxication in comparison to the other evidence at issue, there is not "a reasonable probability that the jury's verdict was influenced by" the argument.  *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004); *see also Troyer v. T.John.E. Prods., Inc.*, 526 F. App'x 522, 525 (6th Cir. 2013) ("Plaintiffs' assertions alone are not enough to establish a reasonable probability of improper influence. . . .  To the extent there was any potential prejudice from the comments or actions, it was cured by the district court's instruction to the jury" that "[t]he lawyers' statements and arguments are not evidence.").

### D. Improper Impeachment Testimony

Simmons next challenges the district court's failure to grant a mistrial after Officer Mahoi improperly testified that one of Simmons's proposed witnesses, Gregory Gladden, was

---

[1] As the district court noted, "Simmons'[s] alcohol intoxication was not a significant issue in the case and he did not dispute the hospital records that showed that he tested positive for opiates and cannabinoids after the incident at issue."  Order at 8.

"incarcerated."[2]   After Mahoi made the reference to Gladden's incarceration, the district court immediately remonstrated with Mahoi on the witness stand, struck the testimony from the record, and instructed the jury to ignore the statement.   Outside the hearing of the jury, the district court later described the testimony as "highly inflammatory, irrelevant, unimpeached and totally without basis and foundation" and the resulting "misconduct to be knowing, intentional and completely violative of the rules."   Nevertheless, the court did not find prejudice and denied Simmons's request for a mistrial.   In considering Simmons's motion at the conclusion of the trial, the district court again found no prejudice and refused to grant a new trial, observing that Gladden was a peripheral witness and that the court instructed the jury to ignore the improper testimony.   Order at 7.

Simmons does not make any arguments on appeal that undermine the district court's reasoned conclusions.   The district court correctly observed that Gladden's testimony was of minor relevance, as he was a peripheral witness (at best) who was not present during the relevant course of events.   The district court's recognition that there was not "a whole lot in [Gladden's testimony] that's helpful" to Simmons's case, even absent the effect of Mahoi's improper testimony, accords with our observation above that it was unlikely that Gladden's testimony affected the outcome of the trial.   Indeed, Simmons himself maintains that it is impossible to determine "[h]ow much of an impact" Mahoi's improper testimony regarding Gladden's incarceration "had on the jury's deliberations," Appellant Br. 37, and thus he cannot meet his burden to demonstrate prejudice.   We therefore cannot say that Officer Mahoi's extremely "brief

---

[2] At the time of Officer Mahoi's testimony, Gladden's deposition testimony had not yet been presented to the jury.  Excerpts from Gladden's deposition were later introduced into evidence without any reference to his incarceration.

testimony" was "so prejudicial as to warrant a new trial" or that "substantial justice" requires

reversal on this basis. *Slayton*, 206 F.3d at 677.

## E. Failure-to-Intervene Instruction

Simmons argues that the district court erred by failing to grant his request to instruct the

jury on a failure-to-intervene theory. In his complaint, Simmons claimed that the defendant

officers each failed in their duties to prevent the use of excessive force and the false arrest by the

other defendants. At trial, Simmons requested "at the last minute," Order at 10 n.3, that the jury

be instructed with Seventh Circuit Pattern Jury Instruction 7.16 on failure to intervene. The

district court did not give the requested instruction.

We review "a district court's refusal to give a requested jury instruction under an abuse

of discretion standard." *Tompkin*, 362 F.3d at 901. "A district court's refusal to give a jury

instruction constitutes reversible error if (1) the omitted instruction is a correct statement of the

law, (2) the instruction is not substantially covered by other delivered charges, and (3) the failure

to give the instruction impairs the requesting party's theory of the case." *Ibid.* Even then, the

resulting verdict will "be reversed only if the instructions, viewed as a whole, were confusing,

misleading, or prejudicial." *Ibid.* Thus, the failure to give even a properly requested jury

instruction will not constitute reversible error if the error were harmless. *See, e.g., Jordan v.

Paccar, Inc.*, 37 F.3d 1181, 1185 (6th Cir. 1994); *Kendel*, 512 F. App'x at 479 ("We will not

vacate a jury verdict based on . . . improper jury instructions unless the . . . improper jury

instructions amounted to more than harmless error.").

The district court did not dispute that the requested jury instruction "is a correct statement

of the law and was not substantially covered by other delivered instructions." Order at 9.

Nevertheless, the court held that the failure to give the requested instruction "did not impair

Simmons'[s] theory of the case" and constituted harmless error. *Id.* at 9–10. Additionally, the court observed that Simmons's counsel did not submit proposed jury instructions, failed to object to the omission of a failure-to-intervene instruction during the court's initial charge conference, and only made his request on the morning that the jury was being charged. *Id.* at 10 n.3.

Even assuming it were erroneous, the district court's refusal to instruct on Simmons's failure-to-intervene theory was harmless because the jury's verdict on the primary-liability claims demonstrates that Simmons could not have prevailed on his secondary-liability theory. The jury did not find that any of the defendant officers used excessive force or engaged in a false arrest or assault and battery of Simmons. *See* Seventh Circuit Pattern Jury Instruction 7.16 (noting that the plaintiff must prove each element of a failure-to-intervene claim, including an underlying primary constitutional violation); *cf. Turner*, 119 F.3d at 429 (noting that "police officers can be held liable for failure to protect a person from the use of *excessive* force" (emphasis added)). Thus, the jury's verdict established that there was no conduct that any of the defendant officers had the obligation to stop or prevent, and they simply could not have been found liable for failing to prevent unlawful conduct that did not occur.[3] *Cf. Pucci v. Nineteenth Dist. Court*, 596 F. App'x 460, 473 (6th Cir. 2015) (suggesting that a "district court's failure to instruct the jury on a valid claim [can be] harmless [where] the jury's verdict on a separate claim demonstrated that the plaintiff would not have prevailed on the omitted claim"); *Wilson v. City of Chicago*, 758 F.3d 875, 881 (7th Cir. 2014) (any error in jury instructions regarding a "doomed" wrongful-death claim was harmless because the jury's rejection of a related excessive-force

---

[3] Simmons himself argues that the "instruction was necessary as the evidence showed that Defendants Napier and Villereal [sic] would have been able to stop the Defendant Mahoi from using excessive force against [Simmons] but failed to do so." Appellant Br. 46. The jury's verdict, however, established that Officer Mahoi *did not actually use excessive force*, thus obviating the need for the failure-to-intervene instruction under Simmons's own theory.

claim necessarily meant that the plaintiff did not prove that the defendant officers' actions were without legal justification); *Knight v. Caldwell*, 970 F.2d 1430, 1433 (5th Cir. 1992) (any error in failing to give certain jury instructions regarding an excess-force claim was harmless because "once the jury answered 'no' to the 'injury' question" regarding the defendant officers' liability, "it could go no further with the other questions in the charge").

### F. Jury Poll

Simmons also takes issue with the district court's poll of the jury at the conclusion of the trial. Federal Rule of Civil Procedure 48(c), which was added by amendment in 2009 and is modeled on Federal Rule of Criminal Procedure 31(d), provides that: "After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually." Simmons did indeed request a jury poll at the close of the case. On appeal, Simmons asserts that the district court erred by allowing the jurors to respond collectively to the poll, thus preventing the court reporter and the parties from determining the individual responses of each juror.

The trial transcript contains the following exchange:

> THE COURT: All right. We're going to ask you individually whether you agree with the verdicts as stated and would you like to -
> THE JURORS: (Collectively) I agree.
> THE COURT: Okay. Very fine. . . .

The transcript does not, however, contain any objection to the court's poll or any indication whatsoever of dissent or disagreement by any juror in response to the court's question. We hold that the unobjected-to failure of the district court to secure individual responses of each juror under such circumstances does not constitute reversible error. An examination of the relevant case law supports this conclusion.

1

The Supreme Court addressed civil jury polls in *Humphries v. District of Columbia*, a case that predates the passage of Civil Rule 48(c) by more than a century. In that case, the Court of Appeals of the District of Columbia initially overturned a jury verdict as "an absolute nullity" because one of the jurors failed to participate in a requested jury poll as he was bedridden. 174 U.S. 190, 192–93 (1899). At the outset of its opinion reversing the Court of Appeals, the Supreme Court observed that "the right to poll a jury exists" and "[i]ts object is to ascertain for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or induced to sign a verdict to which he does not fully assent." *Id.* at 194. The Court also noted, however, that polling the jury "is not a matter which is vital, is frequently not required by litigants; and while it is an undoubted right of either, it is not that which must be found in the proceedings in order to make a valid verdict." *Ibid.* Indeed, the Court ultimately determined that that an error in conducting a jury poll—and even the failure to conduct a poll under some circumstances, such as "when it is clear that the verdict has received the assent of all the jurors"—does not necessarily "render the verdict a nullity." *Id.* at 196; *see also id.* at 194 (suggesting that the denial of a request for a poll where a verdict is returned in the presence of the jury without dissent would not "render the proceedings absolutely null and void"). The Court therefore reinstated the overturned jury verdict.

2

Over the following century, a "prevailing rule" developed in the *criminal* context "that a failure to poll the jury after a timely request constitutes per se reversible error." *Ira Green, Inc. v. Military Sales & Serv. Co.*, 775 F.3d 12, 25 (1st Cir. 2014). Simmons urges us to adopt this rule and hold that the failure of the district court in this *civil* case to poll the jurors individually

similarly requires reversal. *See* Appellant Br. 49–50. While there is some support for Simmons's position in the sparse case law addressing jury-poll claims under Civil Rule 48(c), the doctrine ultimately points against him.

In *Verser v. Barfield*, the Seventh Circuit considered a claim raised by a pro se incarcerated plaintiff that his total exclusion from the proceedings in his civil case prevented him from exercising his right to poll the jury under Civil Rule 48(c). 741 F.3d 734, 736–37 (7th Cir. 2013). Before the jury's deliberations in that case, the trial judge ordered that the plaintiff be returned to prison, where he was left totally incommunicado and without means of participating in the proceedings. The plaintiff was completely absent when the jury's adverse verdict was delivered, and he thus was unable to request a poll. He also was unaware that one of the jurors made a statement on the record that: "This was very hard for us. Many of us—the majority feel that the defendants all had a part to play in what happened to [the plaintiff], but, because there was a lack of evidence, we could not find the defendants guilty." *Id.* at 737.

On appeal, the Seventh Circuit first observed that Civil Rule 48(c) was "modeled on Federal Rule of Criminal Procedure 31(d), which gives the same polling right to the parties to a criminal prosecution." 741 F.3d at 738.[4] The court then determined that the case law applying Criminal Rule 31(d) was "fully applicable" to the civil context under Civil Rule 48(c). *Id.* at 739. The court made this determination because the text of Civil Rule 48(c) is nearly identical to

---

[4] The right to poll in a criminal case "is a substantial right" based upon Criminal Rule 31(d), "not a right flowing from any of the constitutional rules of criminal procedure." *Verser*, 741 F.3d at 738. Criminal Rule 31(d) provides:

> Jury Poll. After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury.

its criminal analog and because "there is little reason to distinguish between the two contexts." *Id.* at 738; *see also* Fed. R. Civ. P. 48 Committee Note ("Jury polling is added as new subdivision (c) [of Civil Rule 48], which is drawn from Criminal Rule 31(d) with minor revisions . . . ."). In dictum, the court observed that a litigant's right to poll the jury is absolute unless waived, and thus a "district court's refusal, or even neglect, to conduct a jury poll upon a timely request is ground for a new trial." *Verser*, 741 F.3d at 738.

The *Verser* court considered the defendants' argument that the error in not allowing the plaintiff the opportunity to request a poll "was harmless because there was no affirmative indication that any individual juror actually disagreed with the verdict." *Id.* at 742. This argument failed to convince the court for two reasons. First, the court stressed that the purpose of jury polls is to have each juror speak for himself "to discover unexpressed dissent, not to reconfirm dissent that is already apparent." *Id.* at 743. To require that the protesting party demonstrate "a signal of 'particular disagreement'" in order to show prejudicial error from the failure to conduct a poll would conflict with this central function. *Ibid.* Second, the court reasoned that, had he been present during the announcement of the verdict, the plaintiff in *Verser* plausibly may have interpreted the juror's statement that a majority of the jurors believed that the defendants had "something to do with what happened," and the juror's use of the term "guilt" rather than "liability" or "responsibility," to mean that a poll of the jury "might be fruitful." *Id.* at 742–43. Thus, "[o]n th[ose] particular facts," where "[t]he circumstances . . . indicated an elevated possibility that at least one juror might not agree with the verdict as read," the Seventh Circuit could not "say that the district court's error was harmless." *Id.* at 743.

The Seventh Circuit's *Verser* decision was distinguished somewhat in the First Circuit's more recent decision in *Ira Green, Inc. v. Military Sales & Service Co.* In *Ira Green*, the jury

returned a multi-part take-nothing verdict in a civil dispute between rival companies. 775 F.3d at 24. After the verdict was read, the trial court inquired whether any party wished to poll the jurors individually. One of the plaintiff's attorneys responded in the affirmative and also informed the court that the jury had failed to announce its answer to one of the pending questions on the verdict form. The court asked the jury foreperson to announce the jury's answer to that question, and once the announcement was made, the court dismissed the jury. None of the plaintiff's attorneys reminded the court about the pending request for a poll. *Ibid.*

On appeal, the plaintiff asserted that the failure to poll the jury constituted per se reversible error. In considering this claim, the First Circuit first examined the Seventh Circuit's conclusion in *Verser* that the case law interpreting Criminal Rule 31(d), and the underlying principle that the failure to conduct a jury poll upon request constitutes per se reversible error, was "fully applicable" to the civil context under Civil Rule 48(c). *Verser*, 741 F.3d at 739. The First Circuit reasoned that the *Verser* court's position was commendable in light of the near identical text of the criminal and civil rules, but noted that the issue was "open to legitimate question." *Ira Green*, 775 F.3d at 25; *see also Wiseman v. Armstrong*, 989 A.2d 1027, 1040–41 (Conn. 2010) (holding that the failure to poll the jury upon request requires automatic reversal in criminal cases but not in civil cases because of the inherent distinctions between the two contexts). The *Ira Green* court did not need to resolve the issue, however, because counsels' failure to renew the request for a poll—like the failure of Simmons's counsel to object to the poll at issue here—took the case "outside the mainstream." *Ira Green*, 775 F.3d at 25.

After stressing that "the law ministers to the vigilant, not to those who sleep upon their rights," *ibid.*, the First Circuit in *Ira Green* determined that the failure of plaintiff's counsel to renew the request for a poll, despite having "ample opportunity to act," constituted a waiver of

that request. *Id.* at 26. Thus, the court held that "a party who requests a jury poll must act reasonably to preserve its rights and, in the circumstances of this case, [the plaintiff] did not do so." *Id.* at 16. In the alternative, the court reasoned that, even if the failure to renew the request constituted an involuntary forfeiture, the plaintiff would only be able to prevail by demonstrating plain error. In order to demonstrate plain error in this context, the *Ira Green* court determined that a plaintiff would need to make "some showing that the verdict was rendered under circumstances indicating a possible lack of unanimity or assent." *Id.* at 27. In that case, the plaintiff was unable to do so because the trial court had emphasized in its charge that the verdict must be unanimous; the jurors "collectively responded in the affirmative" when asked by the court if they reached a unanimous verdict; and there was "nothing in the jurors' demeanor or behavior to suggest that any one of them did not agree with the verdict." *Ibid.* (internal quotation marks omitted).

3

The circumstances of Simmons's case are nearly identical to those at issue in *Ira Green* (and are distinguishable from the circumstances in *Verser*). The district court below did indeed stress in its jury instructions that the "verdict, whether for or against the parties, must be unanimous." The jurors collectively responded "I agree" when asked if they agreed with the verdict as stated in response to Simmons's request for a poll. And Simmons points to nothing in the record that would "suggest to even the most wary observer that the jurors were not all of one mind." *Ibid.* In *Verser*, by contrast, there was no opportunity for a poll to be requested and thus no reasonable opportunity for the plaintiff to assert his rights or to discover unexpressed dissent. 741 F.3d at 743. Moreover, there was in fact an affirmative indication by at least one juror of potential unease with the verdict in that case. *See ibid.* No such circumstances are present here.

On the particular facts of this case, any flaw in the jury poll falls on the harmless-error side of "[t]he line of demarcation between those rulings which are simply erroneous and those which vitiate the result." *Humphries*, 174 U.S. at 194. Allowing an attorney to request a jury poll and then sit in silence in the face of a potential (and easily correctable) flaw in that poll, only to raise the issue later in an attempt to seek automatic reversal on appeal, "would place a premium on agreeable acquiescence to perceivable error as a weapon of appellate advocacy." *Ira Green*, 775 F.3d at 27 (quoting *Reilly v. United States*, 863 F.2d 149, 161 (1st Cir. 1988)). Ultimately, Simmons cannot demonstrate that any deficiency in the court's poll affected his substantial rights and thus his claim fails.

## G. Weight of the Evidence

In his final attempt to undermine the result of the trial below, Simmons argues that the district court erred by not finding that the jury's verdict was against the great weight of the evidence. Simmons maintains that he offered uncontroverted proof to the jury on all elements of his claims, and that the defendant officers failed to offer any evidence to dispute his version of events.

When a party requests a new trial on the ground that the verdict is against the weight of the evidence, "we will uphold the jury verdict if it is one the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified." *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014). In this case, the district court correctly determined that:

> Based on all of the testimony and documentary evidence received at trial, the jury could have reasonably believed that the defendants did not falsely arrest Simmons, did not use excessive force against him, did not assault him, and did not batter him, notwithstanding the evidence he presented regarding his alleged injuries. Simmons fails to explain what acts of which defendants caused the injuries

and does not allow for the possibility that other acts may have led to them.

Order at 11–12.  To the extent that Simmons argues differently based on the officers' failure to offer an alternative explanation for his injuries, the district court rightly stressed that the officers had no such burden.  Rather, it was Simmons's burden to establish by a preponderance of the evidence that the officers caused his injuries unlawfully.

There was substantial testimony in the record suggesting that the officers did not use excessive force or arrest Simmons improperly.  For example, Officer Napier testified that: she stopped and attempted to detain Simmons based on the call from dispatch about an armed man at the gas station; Simmons repeatedly disobeyed her commands to stop and get on the ground; she took Simmons to the ground when he refused to comply and she struggled to get him into handcuffs; Simmons's head never struck the ground during the encounter; she used pepper spray in accordance with department policy when Simmons refused to get into the police car; and she did not observe any injuries to Simmons beyond his reaction to the pepper spray.  Officer Mahoi also testified that: Simmons refused to obey Officer Napier's commands; no officer used a choke hold on Simmons; Simmons was pushing, thrashing, and screaming throughout the encounter; and the officers ensured that Simmons's head did not hit the ground during the struggle.  While we have no doubt that Simmons vehemently disagrees with this version of events, the jury certainly was entitled to credit this testimony.  Ultimately, the jury's determination that the officers did not use excessive force or falsely arrest Simmons is reasonable in light of such evidence.

IV

For the foregoing reasons, we AFFIRM the district court's judgment.